GUESS *v.* SOUTHEASTERN UTILITIES SERVICE Co., et al.

No. 39946          February 6, 1956          85 So. 2d 173

*Travis & Moore,* Jackson, for appellant.

*Watkins & Eager, Shelby Rogers,* Jackson, for appel-
lees.

HALL, J.

On December 10, 1951, the appellant, who will here-inafter be referred to as the claimant, was in the employment of Southeastern Utilities Service Company, whose insurance carrier is the Fidelity & Casualty Company of New York, and was engaged in the construction of a power line. The crew was stationed at Magee, Mississippi, and its truck and equipment were regularly stored at night at a filling station in Magee which is

referred to in the record as the headquarters for this crew. They were working out in the country and would leave the headquarters, riding on a truck, at 8 A. M. and would cease work in the afternoon in sufficient time to arrive back at the headquarters at 4:30 P. M. On the date named, when the crew had finished work for the day, the employees boarded the truck and started back to their headquarters. In getting in the truck the claimant sustained a severe blow on his head by striking it against a round three-inch rod of iron extending about head high from one side of the truck to the other. Throughout the record this rod of iron is commonly referred to as a "headache bar." The blow to claimant's head was obviously very severe. It gave him a severe headache and nauseated him before the truck reached headquarters and when he alighted from the truck he was so dizzy and nauseated that other employees had to support him and assist him in sitting down on the running board where he vomited and was apparently in a very serious condition. He was carried to a hospital in Magee and in a few hours was transferred by ambulance to a hospital in Jackson where he remained several days. X-rays revealed no fracture of the skull. In a short time the claimant developed diplopia, which is commonly called double vision. In double vision the eyes do not co-ordinate; one eye will see objects in one direction and at the same time the other eye will see objects in a different direction, and both eyes are practically useless unless one of them is covered. The claimant was examined by about fourteen different doctors and their testimony or statements are contained in the voluminous record before us. Most of the doctors testifying for the insurance carrier agree that the claimant has a serious injury and is able to do very little. Two of the carrier's doctors performed an operation of one of the claimant's eyes March 11, 1953, which consisted of cutting some of the muscles which control the movement of the eyeball.

It was their idea that this might restore co-ordination to the eyes, but the operation was not successful and finally on July 27, 1953, they fitted the claimant with glasses which contained one opaque lens, and these two doctors testified that the claimant attained his maximum medical and surgical benefits on approximately August 1, 1953.

On the hearing the attorney-referee awarded the claimant compensation for temporary total disability from December 10, 1951, to August 1, 1953, and found that the claimant reached his maximum degree of recovery on July 31, 1953. He further found that the claimant sustained a permanent partial disability from said injury from August 1, 1953, and directed the payment of same in the amount of $25 per week, not to exceed 450 weeks or the total sum of $8,600, from August 1, 1953, as well as all necessary medical, surgical and hospital bills, including a fee of $35 to Dr. M. L. Batson and $25 to Dr. J. Gordon Dees, who were selected by the claimant and who testified in his behalf at the hearing. The latter allowance was because the claimant's best interests had been prejudiced by the finding of some of the carrier's doctors and that the findings of Drs. Batson and Dees upset the findings of the carrier's doctors. He further found that the carrier and the employer wrongfully and without authority suspended and have not paid any compensation for the period from November 24, 1952, to March 4, 1953, and he directed that they pay not only for this period but a ten percent penalty under Section 13, sub-section (e), of the Compensation Act.

On appeal to the full Commission a majority thereof amended the order of the attorney-referee by allowing the claimant permanent total disability from December 10, 1951, in the amount of $25 per week. A majority of the Commission also directed the payment of all medical costs and disallowed the assessment of any penalties for the period during which the claimant was paid nothing.

On appeal from the Commission's order the circuit court affirmed the same and the claimant appeals here and the employer and carrier cross appeal. The claimant contends that the award for temporary total disability from December 10, 1951, through August 1, 1953, as found by the attorney-referee, was correct and that this finding should be restored and that an award of permanent partial disability beginning August 1, 1953, as found by the referee, should be restored. In the record in this case there are contained five reports from the carrier to the Commission which show that from December 11, 1951, to June 30, 1953, the carrier has paid to the claimant temporary total disability benefits in the amount of $25 per week except for the period from November 24, 1952, to March 4, 1953, during which period of time the payments were arbitrarily suspended, without authority, by the claims manager for the carrier.

■ ■ The great weight of the evidence in this case sustains the finding of the attorney-referee and his order in awarding temporary total disability from the date of the accident to July 31, 1953, and his finding that the claimant reached his maximum recovery under medical and surgical treatment on the last named date. The record further shows with little or no dispute that the claimant is no longer able to pursue his former occupation but that he is not totally disabled and is able to do some things. It is our opinion that the finding and award of the attorney-referee in this respect should be restored, and the finding of the Commission and the circuit court to the contrary should be reversed. See J. F. Crowe Well Servicing Contractor, et al. v. Fielder, 80 So. (2) 29, not yet reported in the state reports. In that case we went into a full discussion of the applicable law. See also Laurel Daily Leader v. James, 80 So. (2) 770, not yet reported in the state reports.

■ ■ It is undisputed that the claims manager for the carrier discontinued the compensation payments to

the claimant on November 24, 1952, and paid nothing from that date until March 4, 1953, and this was without notice to, or authority from, the Commission. We think it is clear that the claimant is entitled to the payments during this period, and in addition thereto he is entitled to the penalty of ten percent on these unpaid payments. See subdivisions (d) and (e) of Section 6998-19, Code of 1942, and the case of Cumbest Manufacturing Co., et al. v. Pinkney, 83 So. (2) 74, not yet reported in the state reports.

On the cross appeal the employer and the carrier have subdivided their brief into five points, the first two and the fifth of which have already been answered herein. The third contention is that at most the claimant should be limited to recovery for the loss of the use of one eye, and the fourth point is that the court erred in finding that the appellant is entitled to recover benefits for a disability to the body as a whole. If the only injury in this case was to an eye, and if there was a loss of the use of the eye, then the appellant's third point would be well-taken, but the record is replete here with medical testimony to the effect that the injury to claimant's brain was serious and permanent, and the attorney-referee and the Commission adopted that testimony and we cannot say that either of them is manifestly wrong. There was a specific finding that the disability was to the body as a whole, which covered not only the injury to the claimant's eye but also the injury to his brain.

The judgment of the lower court and of the Commission will therefore be reversed and the findings of the attorney-referee will be reinstated in accordance with this opinion, and the cause remanded to the Commission for supervision of the payments due.

Reversed, judgment here, and remanded.

*McGehee, Lee, Holmes* and *Ethridge*, JJ., concur.