Morgan·v. J. H. Campbell Construction Co., et al.

No. 40289        November 19, 1956 ·        90 So. 2d 663

*Wright, Overstreet & Kuykendall,* Jackson, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellee.

HALL, J.

On August 14, 1952, Bob Morgan while in the employment of J. H. Campbell Construction Company suffered a heart attack which was diagnosed as an acute myocardial infarction. The employer and its insurance carrier refused to pay compensation and subsequently a claim was filed and was heard by the attorney-referee, who found that the disability arose out of and in the course of the employment and awarded compensation for temporary total disability under Section 8, subsection

(b), of the Mississippi Workmen's Compensation Act. The date of this order and finding is March 14, 1953. Thereafter the carrier paid compensation in the amount of $25.00 per week from the date of injury to June 29, 1954.

The claimant was under the treatment of Dr. T. E. Wilson who on April 16, 1953, certified that the claimant's condition was improved but he stated that claimant was still unable to participate in any gainful occupation. He expressed the belief however that after sixty days, a re-examination would reveal his condition to be such that he might be able to go to work at that time. The claimant continued under Dr. Wilson's treatment and on May 17, 1954, Dr. Wilson certified that the claimant has been permanently and totally disabled since the date of his attack.

On August 18, 1954, the attorneys for the employer and the carrier filed a motion with the compensation commission to determine and adjudge that the claimant is now and has been permanently and totally disabled since the date of his heart attack on August 14, 1952, and that they are obligated only to pay compensation for permanent total disability not to exceed the sum of $8,600.00 in accordance with Section 8 (a) of the Mississippi Workmen's Compensation Act. This motion was controverted and on December 16, 1954, the attorney-referee found that the claimant has been totally and permanently disabled since the date of his heart attack and directed payment of compensation from August 14, 1952, for permanent total disability at the rate of $25.00 per week for a period not to exceed 450 weeks or the maximum of $8,600.00, whichever shall be the lesser in amount, as provided in the Act, less the amount already paid.

The claimant appealed this decision of the attorney-referee to the full commission, which on September 22, 1955, entered an order that the attorney-referee was in error and that his order should be amended, and it accord-

ingly ordered the employer and the insurance carrier to pay to the claimant compensation from August 14, 1952, for a period of time up until May 17, 1954, and that such compensation shall be designated as compensation for temporary total disability. The commission further ordered that thereafter and beginning on May 18, 1954, compensation shall be paid to the claimant at the rate of $25.00 per week for a period not to exceed 450 weeks, or the maximum of $8,600.00, whichever shall be the lesser in amount, and that such payments after May 17, 1954, shall be designated as payment for permanent and total disability.

On the hearing no testimony was offered but there was a stipulation by agreement of counsel which embodied the material findings of the original order of the attorney-referee. Dr. Wilson's letter was also stipulated as being his evidence in the case and it was further stipulated that this letter was obtained by a representative of the carrier; that the said Dr. Wilson was the personal attending physician of the claimant from and after the date of the award for temporary total disability up until the present time, and, as such, conducted all the ways and means of the treatment of the claimant, which was all done with the knowledge and approval of the employer-carrier; that up until the date of said letter of May 17, 1954, neither the claimant nor the employer, carrier, nor their counsel, had any official knowledge of a determination that the disability of the claimant was permenent and total. It was further stipulated that the exact time that Dr. Wilson determined the permanent and total character of the claimant's disability may not have been the exact date of said letter but that it was on or about that time and this in spite of the fact that he said in his letter that it was permanent from the date of the original injury, and it was stipulated that during the said period of time that the claimant was treated by Dr. Wilson, the doctor was endeavoring to

treat him in such a way that he could recover from his disability, either wholly or partially, which, according to his letter he failed to do.

From the order of the commission the employer and carrier appealed to the circuit court, which court reversed the order of the commission and directed the payment of compensation benefits from August 14, 1952, for permanent and total disability at the rate of $25.00 per week for a period not to exceed 450 weeks or the maximum of $8,600.00, whichever shall be the lesser in amount, deducting, of course, the benefits already paid to the claimant. From that order of the circuit court the claimant appeals here.

The claimant contends that he is entitled to benefits for temporary total disability up to the time of Dr. Wilson's letter of May 17, 1954, and that from and after that date he is entitled to permanent total disability benefits over and above and in addition to what has already been paid him for temporary total disability. We do not think that the claimant's position is well taken. Section 8 of the Compensation Act, which is found in Section 6998-09 of the Mississippi Code of 1942, provides in part as follows:

"Compensation for disability shall be paid to the employee as follows:

"(a) Permanent total disability: In case of total disability adjudged to be permanent, sixty-six and two-thirds per centum (66 2/3%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, shall be paid to the employee not to exceed four hundred fifty (450) weeks or the maximum of eight thousand six hundred dollars ($8,600.00), whichever shall be the lesser in amount. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof, shall constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts.

"(b) Temporary total disability: In case of disability total in character but temporary in quality, sixty-six and two-thirds per centum (66 2/3%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, shall be paid to the employee during the continuance of such disability not to exceed four hundred fifty (450) weeks or the maximum of eight thousand six hundred dollars ($8,600.00), whichever shall be the lesser in amount.

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum (66 2/3%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, which shall be paid following compensation for temporary total disability paid in accordance with subdivision (b) of this section, * * * ".

It will be noted that subsection (c) provides that permanent partial disability shall be paid following compensation for temporary total disability paid in accordance with subdivision (b) of the Section. It nowhere provides that permanent total disability shall be paid in addition to payments for temporary total disability. While we are committed to a liberal interpretation of the Act, we are not authorized to rewrite the Act or to add to its terms.

Appellant relies on the case of J. F. Crowe Well Servicing Contractor, et al v. Fielder, 80 So. 2d 29, not yet reported in the State Reports. In that case we held that where compensation has been paid for temporary total disability and the claimant has reached the maximum benefit from medical care and treatment before the expiration of 450 weeks or before the total paid amounts to $8,600.00, and the claimant immediately following is rated as permanently partially disabled, he is entitled to be paid for such permanent partial disability under the above mentioned subdivision (c). The case did not deal at

all with the question of a total permanent disability following a temporary total disability. There we simply followed the exact provisions of the statute.

Appellant also relies on the case of Laurel Daily Leader, Inc., et al v. James, 80 So. 2d 770, 773, not yet reported in State Reports. We there held that temporary total disability might follow payments for total and permanent disability, but we were very careful to say that the two combined should not exceed the maximum provided by the statute.

We think that more in point is the case of Baggett v. "M" System Trailer Co., et al, 86 So. 2d 874, not yet reported in State Reports. In that case the appellants contended that after having drawn benefits for total and permanent disability in the maximum amount, they were also entitled to permanent partial disability for the loss of the use of two fingers, the contention being that the benefits under our compensation law should be applied consecutively. We there stated that in certain instances, which were not there applicable, we have so held, but we then stated, "But in this case we are of the opinion that since the entire disability in this case stems from and originated as the result of a single accident, the allowance of total and permanent disability is all inclusive."

In the case of Marsh v. Aljoe, et al, (Wyo.) 284 P. 260 (263), the Supreme Court of Wyoming passed on the identical question here involved and said:

"Courts are not agreed as to whether or not total temporary disability may be compensated in addition to permanent partial disability, some holding that a workman's temporary total disability is distinct from permanent partial disability, even though arising out of the same injury. Industrial Comm. v. Ocean Acc. & Guar. Corp., 67 Colo. 427, 180 P. 568. Others hold the contrary. Georgia Casualty Co. v. Jones, 156 Ga. 664, 119 S. E. 721, and cases cited; Spring Canyon Coal Co. v. Industrial Comm., 57 Utah 208, 193 P. 821; Spring Can-

yon Coal Co. v. Industrial Comm., 60 Utah 553, 210 P. 611; Moses v. National Union Coal Mining Co., 194 Iowa 819, 184 N. W. 746; Fame Armstrong Laundry Co. v. Brooks, 226 Ky. 22, 10 S. W. 2d 478; Snyder, Workmen's Compensation Law, Sec. 570.

"That is not the situation in this case. According to all the evidence, and according to the theory of the claimant, his disability was permanent from the beginning, and the jury merely arbitrarily determined that temporary total disability ended at the time of the verdict. Not many cases have been found in which the courts have passed upon the specific point here involved. It appears in the case of Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 P. 886, 887, that the statute of Montana allows compensation for temporary total disability for not exceeding three hundred weeks, and compensation for permanent total disability for not exceeding four hundred weeks, at a certain rate and at another rate thereafter. The court, speaking of the allowance to be made for permanent total disability, says:

" 'If the total disability proves not temporary, but permanent, payment is governed by section 2913. It was in fact a permanent condition, not a temporary one. There is no concurrent condition here, nor any double payment over the same period. The compensation is paid during the period of disability—the period of total disability—which shall not exceed 400 weeks, and after that at the rate of $5 per week.'

"In the case of Baffi v. Lehigh Valley Coal Co., 87 Pa. Super. Ct. 579, the court held that, when compensation was paid for permanent total disability, no other allowance could be made in addition thereto, and the court said in part:

" 'When this claimant was paid the maximum amount for total disability, that ended the matter. He could not get anything more from any cause arising out of the same accident. He cannot be more than totally disabled,

and when the fact appears that total disability has been compensated for, he cannot tag on another disability.'

"See, also, Appeal of Sargent & Co., 93 Conn. 26, 104 A. 490.

"It is apparent that, if both compensations made in this case could be made in every case in which a permanent total disability appears, it would be an inducement for the claimant to have the compensation for permanent total disability delayed as long as possible, so as to be able to draw the sum of $50 per month during the time of temporary total disability. The one that would be able to delay the matter the longest would be able to get the most, and workmen situated alike would not be treated alike under the law. We do not think that the Legislature contemplated any such situation. We think, accordingly, that the double allowance was error."

In the case of Woin v. Anaconda Copper Mining Co., (Mont.), 43 P. 2d 663, 669-670, the Supreme Court of Montana also passed on this question and said:

"Defendant contends that 'the district court erred in entering judgment for 400 weeks at the rate of $12.50 per week, without any deduction for compensation theretofore paid claimant.' It appears that claimant received compensation at the rate of $12.50 per week for a temporary total disability from May 2, 1924, until about October 1, 1924, approximately 21 weeks, and the court held that he was entitled to further compensation at the rate of $12.50 per week (for permanent total disability) for 400 weeks from March 28, 1930, 'without any deduction for compensation heretofore paid him during his healing period.' * * * *

" * * * Claimant bases his claim for compensation for permanent total disability upon the injury which he received May 2, 1924. Therefore, such disability must of necessity relate back to the temporary total disability which arose out of the same injury. In other words, the temporary total disability finally became permanent

rather than temporary; in effect, then, there never was any temporary total disability; it was rather a permanent total disability all the time. For such total disability the period of compensation shall not exceed 400 weeks. Accordingly, the period from May 2 to October 1, 1924, during which claimant received compensation, should be included in the 400 weeks. The fact that he did not draw any compensation from October 1, 1924, until March 28, 1930, would not change the legal effect of the situation in the least; neither would it affect or alter the ultimate award to which he was entitled for his total permanent disability. It is not to be understood, however, that claimant was entitled to compensation for the period from October 1, 1924, until March 28, 1930. The record discloses that he did not claim any compensation for that period. Indeed, he disclaimed any right to compensation during that time in order that he might accept employment, and he worked almost continuously during that entire period.

"Claimant was entitled to an award of compensation for a period of 400 weeks from March 28, 1930, less the amount which he received as compensation from May 2, 1924, to October 1, 1924. The court erred in refusing to make that deduction from the award."

We are of the opinion that under the Mississippi statute and under the foregoing authorities the claimant is not entitled to recover both for temporary total disability up to May 17, 1954, and then to start over again and recover for permanent total disability for a period of 450 weeks after May 17, 1954, or the maximum of $8,600.-00, for the reason that his entire disability relates back to the beginning of his rating of temporary total disability and that such disability later became permanent as of the date of the injury, it having proved to be a permanent total disability all of the time from the date of the injury up to now. We are of the opinion that the attorney-referee and the judgment of the circuit court were

correct and that the conclusion of the full commission was erroneous, and the judgment of the circuit court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Holmes,* JJ., concur.