I. Taitel & Son, et al. *v.* Twiner

No. 42770        October 28, 1963        157 So. 2d 44

*Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellants.

*Jacobs, Griffith & Hatcher,* Cleveland, for appellee.

ETHRIDGE, J.

Mrs. Iva Lou Twiner, appellee, worked as a seamstress and ''bundle boy'' in a garment plant. On July 27, 1960 she received an injury which arose out of and in the course of her employment by I. Taitel & Son, appellant. After a lengthy hearing, the attorney referee awarded her temporary total disability benefits from date of injury through December 1, 1961, and thereafter permanent partial disability. The Workmen's Compensation Commission, the trier of facts, amended the attorney referee's order, and found that claimant had been

permanently and totally disabled since the date of her accident. It therefore awarded her permanent total disability benefits from the date of the accident. The Circuit Court of Sunflower County affirmed the commission's order. We have concluded that there was substantial evidence supporting the order, and affirm the commission and circuit court.

Section 8 of the Workmen's Compensation Act (Miss. Code 1942, Rec., § 6998-09) provides compensation for different types of disability. Section 8(c)(25) states:

"Other cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum (66-2/3%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest, and such payments shall in no case be made for a longer period than four hundred fifty (450) weeks."

In 1960 the Legislature amended Section 2(9), the "definitions" section of the statute, by adding the last clause. Miss. Laws 1960, ch. 276; Code § 6998-02. It provides:

" 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings."

██ █ Prior to her injury Mrs. Twiner was in good health. Her regular job as a seamstress was to operate an electrically powered commercial sewing machine, sewing pockets onto boys' and men's jackets. For temporary intervals she served as a "bundle boy", carrying bundles of garments, which she stacked on a table. As she turned

to pick up a bundle which weighed 40-50 pounds, she twisted a knee, and pain began in her right leg. She went to her personal physician and was then referred to two Memphis doctors: Dr. Fred P. Sage, an orthopedic surgeon, and Dr. James C. H. Simmons, a neurosurgeon. After giving Mrs. Twiner regular treatments without effect, Dr. Simmons operated on her on January 18, 1961 and removed a herniated disc. The commission was warranted in finding that claimant has been permanently and totally disabled since the date of her accident and in excluding any cause other than the work-injury; and in holding that she is not able to perform any work in a gainful occupation. Morgan v. J. H. Campbell Constr. Co., 229 Miss. 289, 90 So. 2d 663 (1956).

■■ ■ Appellants argue there is no substantial evidence to support the finding of total and permanent disability. This is based principally on statements of Dr. Simmons that Mrs. Twiner "had 15% permanent partial impairment to her body as a whole as a result of her disc trouble"; and by Dr. Sage that she had a permanent disability of "approximately 20% of the value of the body as a whole." These particular conclusions must be related to the terms of the statute and other relevant testimony, about which later reference will be made. The thrust of appellants' argument involves the effect of the 1960 amendment to Section 2(9). It defines disability as incapacity because of injury to earn wages received at time of injury "in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Appellants say this amendment reflects a legislative intent to measure disability exclusively by medical evidence and functional loss "rather than by industrial loss." So they contend any evaluation by the commission greater than 20% of permanent partial disability is not "supported" by medical findings, under section 2(9).

The purpose of the 1960 amendment was not to require medical findings to be the exclusive basis for establishing disability. Such a mandate would be utterly inconsistent with the remainder of section 2(9), which establishes a standard of incapacity to earn wages in the same or other employment; and with the statutory basis of this particular award, section 8(c)(25), which measures compensation by loss of ''wage earning capacity thereafter in the same employment or otherwise.''

The 1960 amendment to section 2(9) requires medical findings to corroborate or support the fact of incapacity and its extent. They do not have to be the exclusive basis for establishing disability. Both of the stated sections reflect an intent to maintain nonscheduled disabilities on the principle of a loss in wage earning capacity, but further to require that such loss must be corroborated in part by medical findings, both as to incapacity and its extent.

Larson points out that the disability concept is ''unique and rather complex''; it is a blend of two ingredients: ''The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply can not make the necessary muscular movements and exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.'' Although the two ingredients usually occur together, each may be found without the other. Under the Mississippi act, however, inability to earn wages must be corroborated in part, but not exclusively by medical findings. Errors frequently result, Larson states, from pre-occupation with either the medical or wage loss aspect of disability. ''An absolute insistence on medical disability in the abstract would produce a denial of compensation'' in many deserving cases, and an insistence on wage loss as the test would deprive a claimant utterly shattered and ruined

in a physical sense from an award, if by his own ingenuity he contrives to make a living. "The proper balancing of the medical and wage-loss factors is, then, the essence of the disability problem in Workmen's Compensation." 2 Larson, Workmen's Compensation Law, § 57.

The commission's findings and order appropriately combined these two ingredients of actual physical injury and de facto wage loss. Dr. Sage, although referring to a functional disability of 20% of the body as a whole, stated that claimant was unable to work at a job which would place stress on her back or which would not allow her to move about as comfort dictated. Mrs. Twiner, with only an eighth grade education and no particular training and experience other than as a seamstress, was in his opinion not capable of holding a job requiring sitting long hours and without freedom to move about. He also thought she was disabled from holding any other such employment which would have these requirements. In addition, the employer's plant manager admitted that he had refused to rehire Mrs. Twiner, and he could not use her, since she could not sit for long periods and needed to move around frequently. The manager of a state employment office testified that claimant in her condition would meet "employer resistance." Claimant had applied at other places for employment, but had not received any. The commission considered all of these and other facts. It was warranted in finding total, permanent disability.

Mrs. Twiner was obese, and her apparent normal posture contained a lumbar lordosis, or "sway-back." Section 4 of the act provides that where there is a "pre-existing physical handicap, disease or lesion" materially contributing to the results following injury, compensation shall be apportioned between that and the effects of the injury. Appellants say that lordosis and obesity were preexisting physical handicaps, and the commission

erred in not apportioning disability between them and the effects of the injury.

■■ The burden of proof is upon the employer to establish by a preponderance of the evidence all of the factors required by the apportionment statute, including the existence of a preexisting physical handicap by medical findings, and it being a material contributing factor in the results following injury. Cuevas v. Sutter Well Works, 150 So. 2d 524 (1963 Miss.). ■■ Since the commission made no provision for apportionment, we must presume it found the conditions to its application did not exist. The testimony of Dr. Sage supported that conclusion. ■■ The evidence justified findings that these conditions were not "physical handicaps" within the meaning of section 4, or if they were, they were not material contributing factors in the results following the injury; and that the compensable disability of Mrs. Twiner had nothing to do with the swelling in her legs.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Brady, JJ.,* concur.