SANDERS *v.* B. E. WALKER CONSTRUCTION COMPANY, et al.

No. 43163 December 14, 1964 169 So. 2d 803

*Daniel, Coker & Horton,* Jackson, for appellant and cross-appellee.

*Carey E. Bufkin, Satterfield, Shell, Williams & Buford,* Jackson, for appellees and cross-appellants.

APPELLANT IN REPLY.

Lee, C. J.

Ollie H. Sanders, claimant, was a 58 year old white male, of little education, with an average weekly wage of $84.29. He had been for three years, and was still, employed by B. E. Walker Construction Company. On May 24, 1961, he was engaged about the work, first operating a "cherry picker", and then a front end loader to fill in the ditch. He described this as rough work. The machine, because of inadequate brakes, ran into the ditch, causing the sterring wheel to spin, thus injuring his hand and arm. In about an hour, he began

to have pains in his chest, and told his boss that he had to go to the doctor. When he went by his home, on the way, he lost consciousness, and did not come to himself until he was in the hospital. He remained there under treatment of Dr. A. L. Gore for nineteen days; and was then carried home, staying in bed for three weeks. He had never had any trouble like that in the past.

No weekly benefits were paid to him, and on June 7, 1961, he filed with the workmen's compensation commission his notice and claim. Thereafter, on July 31, 1961, the employer and its insurer filed their denial of liability, but asserted that, if mistaken in their refusal to assume payment of the weekly benefits, they were entitled to a proration because of pre-existing causes.

A hearing was conducted October 10, 1961 by the attorney-referee. The claimant testified substantially as set out above. Dr. Gore testified that, upon his examination, he found a coronary occlusion. It was his opinion that the strenuous work, which Sanders was doing that morning, had precipitated the occlusion, which caused the heart attack, and that he definitely sustained an infarct. It would require nine to twelve months before the patient could return to the kind of work, which he had been doing, but that, in approximately three months, he ought to be able to do light work. Dr. J. Manning Hudson, an internist, was his consultant. The doctor, as family physician, had never had any complaint from claimant as to any heart condition. The heart was weakened from atherosclerosis as he now knows. He expects improvement in nine to twelve months. But he could not fix the percentage of contribution from the pre-existing condition. There was some disability at that time from both conditions, both pre-existing and the injury. He will not again be able to do that kind of work.

There was a further hearing on December 1, 1961, when Dr. William H. Rosenblatt testified. He said that there was a causal relationship between the work that Sanders was doing at the time and his acute heart attack. He attributed fifty percent to each, the pre-existing and the job work. This was about two months after Dr. Gore had testified. He did not think there was a permanent disability as a result of the heart attack. He recommended a desk job of some kind for him.

Mrs. Sanders testified that her husband has done nothing since he got out of the hospital and was still under treatment of Dr. Gore.

At this juncture, on motion of the defendants, the case was recessed for rehearing, with notice to be given to all. But no further evidence was offered.

On January 2, 1962, the attorney-referee entered an order finding (1) that the defendants should pay the medical services and supplies; (2) that the claimant had not reached maximum medical recovery; and (3) that the claimant's pre-existing disease contributed fifty percent to the claimant's disability. He therefore ordered that the employer and insurer pay temporary total disability at the rate of $17.50, beginning May 24, 1961, and during the continuance of such disability, subject to the maximum limitations of the act; that they pay all of the medical services and supplies incurred or to be incurred, in accordance with section 7 of the workmen's compensation act (Mississippi Code Annotated section 6998-08 (1952)); and that they pay the penalties provided by section 13(e) and section 28(d) of the act (Mississippi Code Annotated sections 6998-19 and 6998-34 (1952), as amended.

The foregoing order of the attorney-referee was affirmed by the commission on March 9, 1962.

The employer and its insurer prosecuted an appeal to the circuit court and claimant there filed a cross-assignment of errors, particularly, the apportionment of

temporary total disability payments, and motion to correct the order of the commission accordingly.

On January 2, 1964, the circuit court affirmed the judgment of the commission, and this appeal is prosecuted.

These same questions now recur on the briefs and arguments presented here.

When Mississippi adopted its workmen's compensation law by chapter 354, Laws of 1948, Mississippi Code Annotated section 6998, et seq. (1953 and Supp. 1962), it was the last state in the union to do so. As appeals began to come to this Court, it was necessary that the Judges should devote much consideration to the study of this law. The statutes, in all of the other states, together with their court decisions, construing the terms of the various acts were available. It was found that in the change over from the law of torts, based on negligence, to this form of remedy, based entirely on disability resulting from accident, arising out of and in the course of the employment, some of the states placed strict constructions on the statutes. But it was evident that the great majority of the courts, all over the country, at the date of our statutory enactment, recognized that these laws should be liberally construed in order to carry out the humane purposes of the acts. Besides, section 1, chapter 354, Laws of 1948, section 6998-01 Mississippi Code Annotated (1953), as originally enacted, provided as follows: ''This act shall be known and cited as the 'Workmen's Compensation Law', *and shall be administered* by the Workmen's Compensation Commission, hereinafter referred to as the commission, cooperating with other state and federal authorities *for the prevention of injuries to workers and in event of injury their rehabilitation or restoration to health and vocational opportunity.''* (Emphasis supplied). The amendment thereto by chapter 275 Laws of 1960, by the addition of the words ''and this act shall be fairly con-

strued according to the law and the evidence", in no way minimized the solemn declaration, supra.

Our first decision, in the case of Lucedale Veneer Company v. Rogers, 211 Miss. 613, 48 So. 2d 148 (1950), said that "the construction must be sensible as well as liberal."

The Court came to the conclusion that it was the purpose of the legislature by its enactment at least to assure the attainment of the following aims:

(1) To provide a quick remedy for the settlement of claims, arising out of industrial accidents;

(2) To insure prompt hospitalization and medical services for those workers who might be fatally injured or sustain temporary or permanent disabilities as a result, and arising out, of accidental injuries, as those workers were engaged in the course of their duties to their employers;

(3) To provide, in case of death, payment of funeral expenses, and weekly benefits to the dependents of the deceased worker, based on a percentage of his average weekly wages, but subject to both maximum and minimum amounts. If death should not occur, like weekly payments in rehabilitation and restoration to health and vocational opportunity (section 6998-01, *supra*), should be made to the disabled worker during the continuance of the total disability. Under Mississippi Code Annotated section 6998-09 (1953 and Supp. 1962) subsections (a) and (b) (1953), being provisions for disability, no difference whatever is made in the basis for the weekly benefits as between permanent total disability and temporary total disability, so long as the latter condition exists. To this end, the legislature gave assurance that, as long as the injured worker was in the hospital, or otherwise totally disabled, subsistence should be provided for him, thus including his dependents, to insure his rehabilitation and restoration. Of course, as long as he might be in the hospital, he would get food and

lodging; but his dependents, being at home, would also have to live, since the breadwinner would have no earnings as long as he was unable to engage in any kind of gainful employment. It had to be kept in mind that the great majority of workers have dependents, who must, at least, have a bare subsistence in order to live; and

(4) To provide that, when the results to the worker could be determined, that is if the disability should result as partial only, the worker would then be partially restored and be able to return to some kind of work and contribute something toward the support of himself and dependents. At that time, the weekly benefits for permanent partial disability would be determined and conform to the schedule, set out in the act. If the disability proved to be total and permanent, the payments, as applied from the beginning, would continue for the statutory period, and in the prescribed amounts.

So construing the act, this Court, in its many decisions, has attempted to follow these clear purposes of the legislature and has exacted of the employer that he commence the weekly payments within fourteen days following the onset of the accidental disability. If the disability was total, these weekly payments were required to be made until such time as the commission might determine that the worker had reached maximum medical recovery. In other words, the results following the injury, that is, the extent and residuals from the injury could not be determined by honest doctors or anyone else until there was an end of total disability and some restoration to health. See J. F. Crowe Well Servicing Contractor v. Fielder, 224 Miss. 353, 80 So. 2d 29 (1955), concurred in by all nine judges. This case has been followed by Guess v. Southeastern Utilities Service Co., 226 Miss. 637, 644, 85 So. 2d 173, 175 (1956); Morgan v. Campbell Construction Co., 229 Miss. 289, 294, 90 So. 2d 663, 665 (1956); and Houston Con-

tracting Co. v. Reed, 231 Miss. 213, 221, 95 So. 2d 231, 234 (1957). Our cases have consistently held to that principle. They are numerous. For a compilation, see Dunn, *Mississippi Workmen's Compensation Law and Practice* sections 32, 37 and 38 (1957 and Supp. 1963).

It was found, in practice, that a number of persons, with pre-existing diseases, etc., were employed in industry. Some of these were affected by their work in different degrees, for various reasons, known or unknown. Heart disease, as in this case, is an instance. These conditions may be unknown at the time, or thought to be so mild by the victims as to be ignored. The work might affect them adversely, but, on the other hand, it may not. The welfare of such persons demanded and required that they have a chance to work, if they are ready, willing, and able to do so; and it would, indeed, be an indictment of the American system and heritage if such handicaps, etc., are to deny to them employment in industry. But, under the law, as originally enacted, which took this class of actions out of the field of tort law, no provision for apportionment of resulting disabilities on account of such pre-existing handicaps, etc., had been incorporated therein.

The Legislature, in 1958, evidently reasoning that industry should only be required to incur limited risks from pre-existing handicaps, took the first action toward that end. Mississippi Laws 1958 chapter 454. Under that amendment, however, a preliminary physical examination, in advance of any subsequent injury, was a condition precedent to an apportionment.

But, by Mississippi Laws 1960 chapter 277, Mississippi Code Anotated section 6998-04 (Supp. 1962), it was provided in part as follows: ''Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of the injury, subject to the following:

*"Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph would be payable, shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury."* (Emphasis supplied).

There is no case from this Court, and none has been cited from other courts of value in the construction of the above language. Consequently, the Court must construe the same in line with reason.

The noun, "results", is defined as "a synoptic publication of the outcome of related competitive events." Webster's Third *New International Dictionary* page 1937 (1961).

Such "results following the injury" cannot be determined until hospitalization and such surgical or medical treatment, or both, have been concluded, and competent medical authority is in position to say that these services have been rendered in accordance with good medicine. Thus, it is only at that time that the commission can reasonably entertain the question of an apportionment.

 ██ Consequently, at that time, if, on a hearing, the commission is satisfied and can reasonably determine from the evidence, confirmed by medical finding, the proportion of the handicap, disease or lesion to the production of the results following the injury, it then becomes its duty to do so. In the meantime, from the date of the accidental injury, the employer and its insurer must pay to the claimant the weekly wage benefit, as required by the statute, beginning on the fourteenth day following the injury until the order of apportionment has been made. Any other construction would be unreasonable and nullify the salutory provisions of the Act. Since the Legislature did not provide that the

apportionment be made at an earlier date, it is evident that it had no such intention.

■■■ The evidence was sufficient to sustain the order of the apportionment on the date of the attorney-referee's order, January 2, 1962. However, he was in error in making the apportionment applicable as of the date of the accidental injury. Neither the commission nor the circuit court having corrected the error, the same is reversed and a judgment will be rendered here in favor of the claimant for the weekly benefit of $35.00 from May 24, 1961 to January 2, 1962, and thereafter, as ordered by the attorney-referee at the rate of $17.50 each week during the continuance of total disability.

## THE REFUSAL TO MAKE AN APPORTIONMENT OF MEDICAL AND HOSPITAL SERVICES.

■■■ There are several good reasons why such an apportionment should not be made, viz: (1) Section 6998-08, Mississippi Code Annotated (1952) provides in part: "(a) The employer shall *furnish* such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus, for such period as the nature of the injury or the process of recovery may require. If the employer fails to provide the same, after request by the injured employee, such injured employee may do so at the expense of the employer. * * *" (Emphasis supplied). Besides, ordinarily, under the provisions of the section, the doctor must furnish a report of the injury and treatment to the employer and commission. (2) Under section 6998-01, Mississippi Code Annotated (1952), supra, the rehabilitation or restoration to health is one of the fundamental objects and purposes of the act. (3) Medical services would necessarily be begun, and, in large measure, performed and rendered, before the results following the injuries could be determined. (4) Impossible situations would arise,

for instance, as to when and how such expenses could and would, be made. (5) Besides, the legislative amendment of 1960 did not mention medical expenses; and, in the absence of any direct reference thereto, there is no basis on which the court could reasonably announce that it was the purpose of the Legislature to make an apportionment of such expenses.

But appellants argue that, in Graeber Brothers Inc. v. Taylor, 237 Miss. 691, 702, 117 So. 2d 469 (1959), where a question arose as to whether the claim was reopened within one year, as provided by Section 6998-27, Mississippi Code Annotated (1952), the Court said that the legislature considered medical treatment as a payment of compensation. This was stated in the original opinion, but, on suggestion of error, the Court negatived such idea when it said: ''Of course, we did not hold in the original opinion herein that monetary amounts paid for medical expenses under Section 7 of the Workmen's Compensation Act, Miss. Code 1942, Sec. 6998-08, are to be included in the maximum amounts fixed for disability benefits under other sections of the act. Section 7 is separate and distinct, without monetary limitations on medical benefits for injuries which arise out of and in the course of employment. Payments therefor are not included in the maximum sums established for specific types of disabilities or death. In the instant case we hold simply that a payment of medical expenses constitutes a 'payment of compensation' for the purpose of tolling the one-year statute of limitations, Code Section 6998-27.'' The reference to section 6998-08 therein clearly showed that the court had no idea whatever of holding that the payment of medical services was linked with benefits to be paid to claimants on account of some loss or deprivation which they may have sustained, nor to recompense therefor. Webster's *New International Dictionary* 2d Ed. (1951); Webster's *New College Dictionary* (1961). It was the obligation

of the employer and insurer to pay such expenses direct to those who rendered them.

Consequently, the Commission correctly held that no apportionment of the cost of such services can be made.

██ ■ The assessment of penalties against the appellants was rightly made. These should be assessed on the actual amounts, which have been found to be due.

It therefore follows that, on direct appeal of Ollie Sanders, appellant and cross-appellee, the cause must be, and it is, reversed as to benefits for temporary total disability and judgment will be entered here for him, fixing such benefits at $35.00 per week from the date of the injury until the date of apportionment, January 2, 1962; and on cross-appeal of the appellee and cross-appellant B. E. Walker Construction Company and its insurer, the cause must in all respects be, and it is affirmed.

Reversed in part on direct appeal and judgment rendered; and on cross-appeal, affirmed; and remanded to Commission.

*Kyle, McElroy, Rodgers and Patterson, JJ.,* concur.

ETHRIDGE, J., concurring in part and dissenting in part:

I concur in that part of the majority opinion holding that medical services and supplies are not subject to the apportionment act. My reasons for that conclusion are somewhat different from those stated in the majority opinion, and will be outlined subsequently.

However, the holding that temporary disability benefits are not apportionable under the statute represents, in my opinion, a substantial departure from the clearly stated legislative intent. The rather unusual grounds for denying apportionment of temporary benefits, assigned by the controlling opinion for writing that limitation into the statute, are that (1) it would be difficult for doctors to estimate the contribution of a preexisting

disease to temporary disability; (2) ''results following injury'' cannot be temporary; and (3) the purpose of the Workmen's Compensation Act, as recited in its original preamble (enacted twelve years before the act in question), was to promote restoration and rehabilitation of the injured worker. The latter is socially desirable, but it is not this Court's job to determine whether an unambiguous statute is wise.

As to the first reason, difficulty of proof is not a basis for reading an exception into the statute. Moreover, here the commission was amply warranted on the medical evidence in finding a fifty percent contribution by Sanders' preexisting disease. The statute requires the commission to make the apportionment on the best available evidence. That duty cannot be shirked because it is difficult. Southeastern Construction Co. v. Dodson, 247 Miss. 1, 153 So. 2d 276 (1963), decided that by a unanimous court. As to the second reason, an industrial injury may have two types of results following the injury, temporary and permanent. No amount of sentiment or explanation can change that plain fact.

In short, and with deference, the controlling opinion reads into the apportionment act, I suggest, an exception which is not only not present, but which the statute in terms denies.

The apportionment statute was passed in 1960, as an amendment to section 4 of the Workmen's Compensation Act. Miss. Code Ann. § 6998-04 (Supp. 1962); Miss. Laws 1960, ch. 277. It provides:

''Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of the injury, subject to the following:

''Where a preexisting physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be

payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury."

The Workmen's Compensation Commission (affirming its attorney referee) found that Ollie Sanders, claimant and appellant, suffered a heart attack which arose out of and in the course of his employment. However, he had a preexisting atherosclerosis, which materially contributed to the heart attack, in the proportion of fifty percent. Claimant had been temporarily, totally disabled since his injury, which occurred about ten months before the commission's order, and had not reached maximum medical recovery. Hence the commission awarded Sanders temporary total disability benefits at the rate of $17.50 per week, one-half of the maximum in the absence of contribution by a preexisting disease. The Circuit Court of Hinds County affirmed that order.

Both of the doctors who treated Sanders diagnosed his condition as a myocardial infarction. Both agreed that his work contributed to the onset of the heart attack, and his preexisting coronary artery disease contributed substantially to the incident. One of the doctors testified that in his opinion Sanders had recovered from the heart attack, and had no disability remaining from it, but that any residuary disability was from his preexisting condition.

## APPORTIONMENT OF TEMPORARY TOTAL DISABILITY BENEFITS

On his direct appeal, Sanders asserts and the controlling opinion holds that it was error for the commission to apportion temporary total disability benefits. The statute provides that where a preexisting disease is "a material contributing factor in the *results following injury*," compensation otherwise payable should

be reduced by the proportion by which the preexisting disease "contributed to the production of the *results following the injury.*" (Emphasis added.).

The word "result" means a consequence, effect, or something brought about or achieved. Webster, International Dictionary 2126 (2d ed. 1950). The majority say that "the results following injury" cannot be known or determined until an injured worker has attained maximum medical recovery.

However, following an injury, there are under the act two kinds of results, temporary and permanent. Section 4 makes no distinction between them. Both are "results following injury."

The problem is to ascertain the legislative intent as reflected in the statute. It includes both temporary and permanent "results," since that word is in the plural, and is not restricted to those which are permanent only. If the legislature had intended to exclude from the apportionment act temporary benefits, it could have done so easily by expressly so stating, or by adding the word "permanent" before the word "results." No such limitation was made, and I am not willing to amend the statute to accomplish a limitation which is contrary to its express terms.

Moreover, section 4 states that the "compensation" otherwise payable will be reduced by the amount of contribution of the preexisting disease. That word is defined as "the money allowable (allowance) payable to an injured worker or his dependents . . ." Miss. Laws 1960, ch. 276, § 1; Miss. Code Ann. § 6998-02 (10) (Supp. 1962). The "money allowance payable" to the injured worker for a disability, either temporary or permanent, is a maximum of $35 per week. Code § § 6998-07, 6998-09. Apportionment reduces the "compensation" payable to the worker. Accordingly, the word "compensation," as thus defined in the statute, would include the money allowances payable to the injured worker, the weekly

benefits, for both temporary and permanent disability. Here again, a holding that apportionment does not apply to temporary benefits requires an insertion into the act of a limitation upon the word "compensation," contrary to the definition in the act itself.

The purpose of the legislature in enacting the apportionment statute are also strong factors in considering whether it applies to temporary benefits. The underlying reasons for apportionment are well summarized in Comment, 32 Miss. L. J. 284 (1961):

"The purpose of such legislation which relieves the individual employer of liability for preexisting infirmities is two-fold: (1) it tends to lessen discrimination in hiring handicapped workers, and (2) it eliminates an injustice to the employer who would, without the apportionment rule, be required to pay more compensation for injury to a handicapped worker because of the preexisting infirmity or injury."

Students of this question and at least one attorney member of the House of Representatives which passed both the 1958 and 1960 apportionment statutes are apparently of the opinion the latter applies to temporary as well as permanent disability benefits. Comment, 32 Miss. L. J. 284 (1961); Shanahan, Amendments to Workmen's Compensation Act 1956-1958, 30 Miss. L. J. 105 (1959); Comment, 30 Miss. L. J. 312 (1959).

Apparently the legislature concluded it was not fair and equitable to require an employer to make compensation payments for that part of a disability attributable to a preexisting physical handicap or disease. Apportionment holds him liable only for that portion of the disability caused by his employment of claimant. With this purpose in mind, it is not carried out by declining to apply the apportionment act to temporary total disability benefits, where (as here) the undisputed evidence by claimant's own doctors is that a substantial part of his temporary disability represents the material

contribution of his preexisting coronary artery disease. Section 4 apportions the contribution of the preexisting disease to all "results following the injury." To say it does not apply to temporary, but only permanent, results constitutes an insertion into the act of that limitation. It also frustrates this essential purpose of section 4.

In the present case, all prerequisites to apportionment exist. Southeastern Construction Co. v. Dodson, 247 Miss. 1, 153 So. 2d 276 (1963); Federal Compress & Warehouse Co. v. Clark, 246 Miss. 868, 152 So. 2d 921 (1963); Cuevas v. Sutter Well Works, 245 Miss. 478, 150 So. 2d 524 (1963).

Eight other states have apportionment statutes, but their terminology varies. None are exactly similar in the respect to the Mississippi act. Only one of these states, Maryland, restricts apportionment to permanent disability. This is by a provision expressly excluding temporary disability. Md. Ann. Code art. 101, § 36 (7) (Supp. 1962). Others apportion temporary benefits. Lindskog v. Rosebud Mines, Inc., 84 Idaho 160, 369 P. 2d 580 (1962); Harris v. Bechtel Corp., 74 Idaho 308, 261 P. 2d 818 (1953); Hanson v. Independent School Dist., 50 Idaho 81, 294 P. 513 (1930). See also Dunn, Mississippi Workmen's Compensation Law § 94.8 (Supp. 1963). These statutes are reviewed in the appendix to this opinion. The fact that other states apportion temporary benefits demonstrates that it is feasible and no more difficult than apportioning permanent compensation, assuming that is pertinent, as the majority opinion indicates.

In summary, I think the apportionment act applies to both temporary and permanent disability benefits. Its terms are plain and unambiguous. It indicates no contrary legislative intent. Both "the results following injury" and "compensation," as used in section 4, reflect an intent to apply the act to temporary benefits.

Moreover, this is consistent with the purpose of apportionment, namely, requiring the employer to pay compensation only for that proportion of claimant's disability attributable to his employment, and not for disability attributable to a preexisting disease or handicap. The wisdom and equality of that legislative decision is not a judicial question.

## APPORTIONMENT OF MEDICAL SERVICES AND SUPPLIES

The commission correctly ordered appellees to pay the entire cost of medical services and supplies under section 7 of the act. Miss. Laws 1948, ch. 354, § 7; Miss. Laws 1950, ch. 412, § 5; Miss. Code Ann. § 6998-08 (1952). Agreeing with the majority on this point, I would suggest several other factors supporting that conclusion.

Section 4 states that where a preexisting disease is shown to be a material contributing factor "in the results following injury, the *compensation* which, but for this paragraph, would be *payable* shall be reduced by that proportion . . . ." (Emphasis added.)

The question is, what is meant by "compensation" which "would be payable"?

Code section 6998-02 (10) contains this definition: " 'Compensation' means the money allowable (allowance) payable to an injured worker or his dependents as provided for in this act, and includes funeral benefits provided therein." The last amendment of this section uses the word "allowable" in place of "allowance," which latter word was in the definition prior to the 1960 amendment. Miss. Laws 1960, ch. 276, § 1. "Allowable" appears to be an erroneous transcription of the correct "allowance," and even if not, does not affect the meaning of the definition.

Section 4 applies only to "compensation" which otherwise would be payable. That is defined as "the money allowance payable to an injured worker." This rather

unusual phrase evidences a legislative intent of a particular type: Apportionable compensation refers to the specific weekly money payments, which are paid directly to the worker or his dependents, being a maximum of $35 per week. Miss. Code Ann. §§ 6998-09, 6998-11, 6998-12, 6998-13 (1952). These payments are made directly to the worker, or, as stated in section 6998-19, "directly to the person entitled thereto, without an award," except where controverted. They are in contrast to "medical services and supplies" under section 7. It does not provide for any money allowance payable to the worker, but requires the employer to furnish medical, surgical and other treatment "for such period as the nature of the injury or the process of recovery may require."

The word "compensation" is used only twice in section 7, where it is stated that, if the employee unreasonably refuses to submit to medical treatment, the commission must suspend payment of "further compensation" during such time as the refusal continues, and no "compensation" shall be paid during such suspension. Section 7 thus contrasts compensation with medical treatment, and considers them separate and distinct factors. Moreover, under section 7 payments of medical bills are directed to the doctor and the hospital, but cannot be paid "until all forms required by the commission have been filed."

In short, the apportionment act applies to the regular weekly payments of compensation payable to the injured worker or his dependents. Such weekly payments, and the furnishing of medical services and supplies, are in different categories, and are distinguishable. When these several provisions are considered together and then contrasted, they reflect a legislative intent to exclude the furnishing of medical services and supplies from the apportionment act. See Shanahan, Amendments to the Workmen's Compensation Act 1956-58, 30 Miss. L. J. 105, 109 (1959).

Cross-appellants rely upon Graeber Bros. v. Taylor, 237 Miss. 691, 115 So. 2d 735, suggestion of error overruled, 237 Miss. 691, 117 So. 2d 469 (1959), and two related cases. Gibbs v. Bass, 237 Miss. 823, 116 So. 2d 542 (1959); Trehern v. Grafe Auto Co., 232 Miss. 854, 100 So. 2d 687 (1958). In *Graeber* payment of medical expenses by the insurance carrier and employer was held to toll the one-year statute of limitations, which provides for reopening a claim at any time within one year after date of "the last payment of compensation." Miss. Code Ann. § 6998-27 (1952). This is the general rule on this particular point. 2 Larson, Workmen's Compensation Law § 78.43 (b) (1961). *Graeber* stated that furnishing medical treatment constitutes the "equivalent" of payment of compensation, and is indicative of "the recognition of liability." The opinion on suggestion of error carefully limited the holding to that point. The payment of medical benefits was sufficiently analogous or "equivalent" to compensation as to result in tolling the statute. *Graeber* recognized the plain fact that a contrary rule would mislead many injured employees, and would not accomplish the legislative purpose to bar any further claim after no benefits of any kind have been actually received for one year. That limited holding does not answer or control the present question.

Idaho cases apportioning medical benefits are based upon statutes of different terminology and application. Lindskog v. Rosebud Mines, Inc., 84 Idaho 160, 369 P. 2d 580 (1962); Harris v. Bechtel Corp., 74 Idaho 308, 261 P. 2d 818 (1953).

*Gillespie, Jones, and Brady, JJ.,* concur in this opinion.

# A P P E N D I X

In addition to Mississippi, eight states have statutes providing for the apportionment of compensation when a preexisting disease is aggravated by a compensable injury.

Cal. Lab. Code § 4663 (1955): "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed for the proportion of the disability due to aggravation of such prior disease which is reasonably attributed to the injury."

Conn. Gen. Stat. Rev. § 31-139 (1961): "In the case of aggravation of a preexisting disease compensation shall be allowed only for such proportion of the disability or death due to the aggravation of such preexisting disease as may be reasonably attributed to the injury on which the claim is based." This statute has been held to apply to occupational disease only. Cashman v. McTerman School, 130 Conn. 401, 34 A. 2d 874 (1943).

Fla. Stat. Ann. § 440.02(19) (Supp. 1963): "Where a preexisting disease is accelerated or aggravated by an accident arising out of and in the course of employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable."

Idaho Code Ann. § 72-323 (Supp. 1963): ". . . If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the additional disability resulting from such accident. . . ." This statute has been held to require apportionment of temporary disability benefits and medical expenses. Harris v. Bechtel Corp., 74 Idaho 308, 261 P. 2d 818 (1953).

Ky. Rev. Stat. § 342.005(2) (1962): "The board shall apportion the aggregate extent and duration of disability among the contributing causes including, but

not limited to, the following: . . . (b) preexisting disease previously disabling; (c) preexisting disease not previously disabling but aroused into disabling reality by the injury for occupational disease.''

Md. Ann. Code art. 101, § 36(7) (Supp. 1962) expressly provides that temporary benefits shall not be apportioned: ''Whenever it shall appear that any permanent disability from which an employee is suffering following an accidental injury, is due in part to such injury, and in part to a preexisting disease or infirmity, the Commission shall determine the proportion of such disability which is reasonably attributable to the injury and the proportion thereof which is reasonably attributable to the preexisting disease or infirmity, and such employee shall be entitled to compensation for that proportion of his disability which is reasonably attributable solely to the accident and shall not be entitled to compensation for that proportion of his disability which is reasonably attributable to the preexisting disease or infirmity. This subsection shall not apply to temporary total and temporary partial disability. . . .''

N.D. Code Ann. § 65-05-15 (1960): ''In case of aggravation of injury or disease existing prior to a compensable injury, compensation, medical, hospital or funeral expenses, or death benefits, shall be allowed . . . only for such proportion of the disability, death benefit, or expense arising from the aggravation of such prior disease or injury as reasonably may be attributable to such compensable injury.''

Wash. Rev. Code § 51.32.100 (1951): ''If it is determined by the department that an injured workman had, at the time of his injury, a preexisting disease and that such disease delays or prevents recovery from such injury, the said department shall ascertain, as nearly as possible, the period over which the injury would have caused disability were it not for the diseased condition and the extent of permanent partial disability which

the injury would have caused were it not for the disease, and award compensation only therefor.'' This section has been held to provide for reduction of compensation where the preexisting disease affects the injury adversely, but allowing full compensation where the injury adversely affects the disease. McArthur v. Department of Labor & Industry, 168 Wash. 405, 12 P. 2d 418 (1932).