J. F. Crowe Well Servicing Contractor, et al. *v.* Fielder.

No. 39663     May 16, 1955     80 So. 2d 29

*Vardaman S. Dunn,* Jackson, for appellants.

*Wall & Allen,* Brookhaven, for appellee.

APPELLANTS IN REPLY ON CROSS-APPEAL.

LEE, J.

On the claim of Curtis L. Fielder against J. F. Crowe Well Servicing Contractor for benefits under the State Workmen's Compensation Act, the attorney-referee (1) fixed August 1, 1951, as the date on which the claimant reached the maximum benefit from medical treatment, (2) found that he had a medical disability of 70% and an earning capacity of 30%, and (3) ordered payment of $25 weekly during the continuance of his partial disability, but not to exceed 450 weeks, as provided by Sec. 8 (c) (21) of the Mississippi Workmen's Compensation Act, as amended. The award, on review by the Commission, was affirmed by a majority vote. On the employer's appeal to the circuit court, the order was affirmed, but modified so as to limit the period to 450 weeks, or $8,600, whichever shall be the lesser. From that judgment, the employer and his insurer prosecuted a direct, and the claimant, a cross-appeal.

The question, on direct appeal, is when, under the State Workmen's Compensation Act, does temporary total disability end.

Fielder was employed by J. F. Crowe Well Servicing Contractor as a roustabout. His weekly wage varied between $80 and $106. On February 13, 1949, as he was performing the duties of his employment, a piece of

iron pipe fell out of a set of poles, struck him on the head, and caused twelve or fifteen fractures of the skull. He was hospitalized immediately; and several days later, on February 21, Dr. Charles L. Neill, a prominent Neurological Surgeon, operated to relieve the pressure of collected fluid from the surface of the brain and to assist nature in mending the damage. The claimant remained in the Baptist Hospital for about ten days.

About October 17, 1949, on the advice of his doctor, Fielder went back to work for the same employer. However, because of dizziness and severe headaches, he was unable to do the work in which he had been engaged. Continuing to follow medical advice, he worked at several light jobs, finally ending up as a night watchman, which work required very little physical effort. The doctor saw him from time to time. Following the operation, Dr. Neill prescribed anti-convulsive medication, which Fielder took. Finally in March 1951, it was necessary for the doctor to perform another operation, by which he cut into the skull and removed a collection of bloody fluid. This necessitated hospitalization for about twelve days.

Dr. Neill testified that brain injuries are unpredictable. They are slow in healing and require about two years of care, study and treatment. He explained that, if he had not been treating Fielder or giving him anti-convulsive medication, his patient might have suffered a series of convulsions and incurred a 100% disability. He explained that he had written the insurance company on July 12, 1950, and advised that, as a result of his prior June examination, the "patient has attained maximum benefit from medical treatment" and rated his disability at "50-60 per cent." But later, as the result of collaboration with another doctor, he was concerned about Fielder's condition, continued to prescribe anti-convulsive medication, and finally performed the second operation. The doctor testified that Fielder had

been under his treatment from the inception of his injuries to August 1, 1951, and that his injury had not healed and he had not reached maximum recovery until August 1, 1951. He estimated the disability, at that time, at 70%.

The proof showed that Fielder earned $686.80 in 1949; $934.50 in 1950; $1,151.50 in 1951; and $1,316.00 in 1952.

Sec. 8 (b), Chap. 354, Laws of 1948, Sec. 6998.09 (b), Code of 1942 Annotated, the applicable part of the Act is as follows: "Temporary total disability: In case of disability total in character but temporary in quality, sixty-six and two thirds per centum (66⅔%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, shall be paid to the employee during the continuance of such disability not to exceed four hundred fifty (450) weeks or the maximum of eight thousand six hundred dollars ($8,600.00), whichever shall be the lesser in amount."

The above section deals with temporary total disability. The benefits there provided for are paid during the continuance of a disability, total in character but temporary in quality. In other words, such benefits are to be paid during the healing period, and until such time as the claimant shall reach the maximum benefit from medical care and treatment. This period may run 450 weeks, but the amount to be paid cannot exceed $8,600.

In 58 Am. Jur., Workmen's Compensation, Sec. 283, p. 779, it is said: "Temporary as distinguished from permanent disability has been defined as 'a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit.'"

When the claimant returned to work about October 17, 1949, he did so under the advice of the doctor who was obviously seeking to ascertain to what extent the patient was responding to treatment. Of course the doctor did not then think that the claimant had reached the maximum benefit of medical care and treatment. As a result

of an examination in June 1950, the doctor concluded that the claimant had reached such maximum benefit; but persistent symptoms and reactions and consultation with another doctor caused him to change his mind about the matter and, upon further examination, he concluded that another serious operation was necessary.

Under the clear proof in this case, the triers of fact were fully warranted in rejecting the employer's contention that temporary total disability ended either on October 17, 1949, or June 22, 1950. In the first instance, it was shown that the claimant returned to work under the advice of his doctor, and was not able to perform his work; and in the second instance, the doctor changed his mind, continued to treat the claimant thereafter, and finally performed another serious operation. The triers of fact were also fully warranted, from the evidence, in finding that the claimant did not reach the maximum recovery from his temporary total disability until August 1, 1951.

The question, on cross-appeal, is whether or not the circuit court erred in modifying the order of the attorney-referee and Commission, whereby the claimant was awarded $25 weekly, during the continuance of his partial disability, not to exceed 450 weeks, by adding thereto "or $8,600.00, whichever shall be the lesser in amount."

Sec. 8 (c) (21), Chap. 354, Laws of 1948, Sec. 6998-09 (c) (21), Code of 1942 Annotated, is as follows:

"Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum (66⅔%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, which shall be paid following compensation for temporary total disability paid in accordance with subdivision (b) of this section, and shall be paid to the employee as follows:

* * *

"(21) Other cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum (66⅔%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest, and such payments shall in no case be made for a longer period than four hundred fifty (450) weeks."

The Act limits the weekly payments to beneficiaries in death cases to not more than 450 weeks or not more than $8,600. Sec. 9 (f) thereof. The maximum period or amount for which weekly benefits may be paid for both permanent total and temporary total disability is 450 weeks or $8,600, whichever shall be the lesser. Sec. 8 (a) and (b) thereof. In other words, in these three categories, the limitations are 450 weeks or $8,600.

Chief Justice McGehee and Justices Roberds, Kyle, Ethridge and Gillespie are of the opinion that the Legislature did not purpose and intend to provide greater benefits for permanent partial disability than for death or permanent total disability; that the rationale for such purpose and intention was recognized in the case of Walters v. Blackledge, 71 So. 2d 433 (Miss.), in its citation of New York Central R. R. Company v. White, 243 U. S. 188, 37 S. Ct. 247, 252, 61 L. Ed. 667, L. R. A. 1917D, 1; that the case of Elliott v. Ross Carrier Co. (Miss.), 70 So. 2d 75, while holding that Sec. 8 (c) (21), supra, applied in connection with the claimant's permanent partial disability, and that if the same degree of impairment continued, the statute as written would apply, it did not say that more than $8,600 should be paid; that since the limitations of 450 weeks, or $8,600, both

appear in the provisions for death, temporary total disability and permanent total disability, evidently the Legislature intended to include also the limitation of $8,600 in Sec. 8 (c) (21), supra; that the failure to do so was a mere omission by the Legislature; and that the Court, in construing this act, should give effect to the legislative purpose and policy, although such construction may go beyond the letter by the law. As Authority therefor, they rely on McCullen, et al. v. State, ex rel., Alexander, 217 Miss. 256, 63 So. 2d 856, and the cases there cited.

Justices Hall, Holmes, Arrington and the writer are of the opinion that it is not necessary for the Court to supply the limitation of $8,600 in order to make the section or the Act workable; that the line of demarcation between permanent total disability and permanent partial disability, in some cases, may not be clearly distinguishable; that the state of some claimants, susceptible of the classification of permanent partial disability, under this section of the Act, may be worse than that of others who may be victimized by the loss of two members, and who thereby may be classified as permanently and totally disabled under Sec. 8 (a) of the Act; that the failure to include the limitation of $8,600 cannot be said to be an omission, when it can be contended with just as much reason that this was a wise provision of the Legislature to authorize the Commission to allow a greater amount of compensation in exceptional cases of permanent partial disability; that there is no ambiguity in the provision; and that the Court should construe the provision as it is written.

All Justices concur in the affirmance of the cause on direct appeal. On cross appeal, Chief Justice McGehee and Justices Roberds, Kyle, Ethridge and Gillespie affirm; and Justices Hall, Lee, Holmes and Arrington dissent.

Affirmed on both direct and cross appeals.

Affirmed.