CUMBEST MANUFACTURING Co., et al. *v.* PINKNEY

No. 39759          November 7, 1955          83 So. 2d 74

January 9, 1956                              84 So. 2d 421

*Wallace & Greaves,* Gulfport, for appellants.

*Wm. S. Murphy,* Lucedale, for appellee.

Holmes, J.

The appellants, Cumbest Manufacturing Company and its insurance carrier, Central Surety and Insurance Company, appeal from a judgment of the Circuit Court of Jackson County awarding to the appellee, Joe Pinkney, under the Mississippi Workmen's Compensation Law, compensation for temporary total disability and for permanent partial disability, and for medical, doctors and hospital expenses.

The appellee, Joe Pinkney, prosecutes a cross-appeal from said judgment in so far as it denies to the appellee a penalty of ten percent on installments of compensation which were not paid within fourteen days after the same became due.

The record discloses the following uncontroversory facts: On October 23, 1952, the appellee was employed by the appellant, Cumbest Manufacturing Company, and had been so employed since prior to 1950. He was a married man, having a wife and five children who were dependent upon him for support. The employer was engaged in saw mill and logging operations and had its mill located about fifteen miles north of Pascagoula, Mississippi. On the date aforesaid, the employer was engaged in lifting logs from the log pile by the use of a steam crane and boom and swinging them around and placing them at the mill site for sawing. The appellee was engaged in tonging the logs. In the process of lifting one of the logs and swinging it in place at the mill, the log, because of insecure fastening, struck the appellant on the back of the head, inflicting serious and permanent injury. He was rendered unconscious, and when seen by his wife at the hospital shortly after the accident, was bleeding at the mouth and ears. He remained unconscious for about a month and was hospitalized for about two months and thereafter was regularly under the treatment of a doctor. Prior to his injury he was a hardworking, conscientious worker, honest and truthful, and always

on the job. His injury was compensible under the Mississippi Workmen's Compensation Law. His weekly wage was $36.17 and his rate of compensation for temporary total disability was $24.12 per week. Without an award he was paid compensation in the sum of $22.67 per week for the period from October 23, 1952, the date of the injury, to August 10, 1953. He should have been paid for said period $24.12 per week, and he is entitled to additional compensation in the sum of $1.45 per week for said period. He is entitled to an award of $60.00 for the expense of twelve trips to the doctor for medical treatment at $5.00 per trip. He reached his maximum degree of recovery one year after his injury, towit, on October 23, 1953. His hospital, nurses, doctors and medical bills amounted to $1381.78 to February 15, 1954 and were paid by the appellants, as was later, the additional sum of $265.05. On August 10, 1953, the adjuster for the insurance carrier discontinued the payment of compensation to the appellee without notice to or authority from the Commission, as provided by Section 6998-19 (d), (e) of the Mississippi Code of 1942.

On application of appellee to the Mississippi Workmen's Compensation Commission filed on May 10, 1954, the cause was listed as a controverted matter and a hearing was had before the attorney-referee, and his findings and order were rendered under date of June 16, 1954.

The attorney-referee found that on October 23, 1952 the appellee was employed by the appellant, Cumbest Manufacturing Company, at an average weekly wage of $36.17, and that he sustained an injury which arose out of and in the course of his employment; that he sustained temporary total disability for the period of one year and reached his maximum degree of recovery on October 23, 1953; that his rate of compensation for temporary total disability was $24.12 per week; that he was paid compensation in the sum of $22.67 per week from October 23, 1952 to August 10, 1953, and is entitled to $1.45 per week additional compensation for said pe-

riod; that because of his injury he has a permanent partial disability, and that his earning capacity is now $15.00 per week, and that he is entitled to compensation for permanent partial disability at the rate of $14.11 per week beginning October 24, 1953 and continuing as long as such permanent partial disability exists, not to exceed 450 weeks; that he is entitled to $60.00 for medical expenses, and that appellant should pay all necessary doctors, drugs, surgical and hospital bills accrued in the cause to the date of the hearing, and all necessary doctors, drugs, surgical and hospital expenses that may accrue in the future as a result of the injury; that he is entitled to the ten percent penalty provided in Section 6998-19 (e) of the Mississippi Code of 1942. The attorney referee entered his order making the award in accordance with his findings.

On a review by the full Commission, the findings and order of the attorney-referee were unanimously adopted and affirmed by the Commission in all respects except the finding of the attorney-referee that appellee's earning capacity following the date he reached his maximum degree of recovery is $15.00 per week and that his rate of compensation for permanent partial disability is $14.11 per week. On the contrary, the Commission found from the proof that appellee, following the date he reached the maximum degree of his recovery, was without earning capacity and that his rate of compensation for permanent partial disability was $24.12 per week. The Commission entered its order accordingly.

On appeal to the circuit court, the order of the Commission was affirmed in all respects except as to the ten percent penalty, which was denied.

Only two questions are presented on this appeal. They are: (1) The amount of compensation to be awarded the appellee for permanent partial disability beginning October 23, 1953, and (2) the liability of the employer for the ten percent penalty on all unpaid installments of compensation more than fourteen days past due.

While conceding that the appellee is entitled to some compensation for permanent partial disability, it is contended by the appellants that there is no substantial evidence to support the findings and order of the Commission. We do not think this contention is well founded. Appellee's disability clearly comes within the classification of "other cases" as set forth in Section 6998-09(c)(21) of the Mississippi Code of 1942, which fixes the rate of compensation for permanent partial disability at sixty-six and two-thirds percent of the difference between the average weekly wages and the earning capacity in the same employment or otherwise following the date of maximum degree of recovery, not to exceed 450 weeks. The proof for the appellee clearly establishes the fact that the appellee is now without earning capacity and the Commission was fully warranted in so finding. Some seven witnesses, not including appellee himself, testified that they had known the appellee both before and after his injury; that before his injury, he was a cheerful, honest, conscientious, energetic, truthful and hardworking man; that some of them had seen him practically every day, some as often as once a week, and some not quite so often; that he was a changed man since his injury; that he was no longer cheerful; that he staggered when he walked; that his wife had to accompany him wherever he went; that he talked incoherently; that he had done no work since his injury and that he was unable to work; that his personality had changed; that he complained of pains in his head and his left side and his leg and that he complained of dizziness. The appellee himself testified that his head continued to hurt and that he suffered pain in his left side and leg; that he was dizzy and "drunk in the head"; that his wife had to assist him wherever he went; that he had been unable to do any work since his injury and that he was unable to work.

The appellants introduced as witnesses, in addition to the medical testimony, Roy Cumbest, Elvis Cumbest, T. E. Johnson, and Francis J. Hubert. Roy Cumbest

and Elvis Cumbest were part owners of the firm of Cumbest Manufacturing Company. Johnson was the bookkeeper for the firm. Hubert was the adjuster for the insurance carrier. Roy Cumbest and Elvis Cumbest admitted that they had seen the appellee only two or three times since he left the hospital. On the occasions when they saw him they observed nothing abnormal in his ability to walk. One of them admitted that appellee's wife usually accompanied him. Both confirmed the fact that he was a hard working, energetic, conscientious and diligent worker, that he was honest and truthful and that he worked when he was able to work. Johnson testified that he had seen the appellee on some six occasions when he came to the mill to get his insurance checks; that he noted nothing abnormal in his walk or in his ability to converse; that his wife usually accompanied him; that appellee complained of dizziness and said that his mind would go and come; that he was a good worker, dependable and on the job all the time before his injury; that the only difference he noted in appellee was that he did not move around as he did before the accident.

Francis J. Hubert testified that he saw the appellee at his home in 1953; that he was coming from his garden; that he did not see the appellee working in his garden; that appellee had some implement in his hand but he could not say whether it was a hoe or a rake or a broom; that he talked to appellee at his fence; that he did not see appellee's wife or anyone else assisting him; that he determined to have the appellee further examined by the doctors; that without waiting for the report of the doctors and without notice to or authority from the Commission, he discontinued the compensation payments on August 10, 1953; that he did not receive any report from the doctor until April, 1954.

According to the record, Dr. Thompson, the doctor who treated appellee, wrote to the adjuster under date of March 4, 1954, advising with reference to the appellee's then condition as follows: "His condition is about the

same, still staggers when he walks. There will be no further disability but the brain injury has not cleared up yet. It may be permanent. At this time I can not say when he will be able to return to work.''

The medical testimony introduced by the appellants consisted of the testimony of Dr. William B. Patton and Dr. J. T. Thompson. Dr. Patton is a neuro-surgeon of Mobile, Alabama. He saw the appellee only twice after his injury, once in December, 1952 and again in April, 1954. He said that on his first examination of the appellee he appeared neurologically negative; that his strength and muscle power were all right and that his coordination was good. He said, however, in view of the history of the case, the appellee had suffered some diffuse cerebral damage because he was emotionally disturbed — that he laughed and cried just as easily and it was difficult for him to concentrate. He further said that he had diffuse encephalopathy, which followed on the heels of severe concussion. He thought the appellee's condition might be due to brain bruising and he recommended an electro-encephalogram, which is a machine used to test brain injury. Dr. Patton saw the appellee the second time on April 19, 1954, at which time he applied the electro-encephalogram test and examined x-rays. He testified that the x-rays showed no fracture of the skull and that the electro-encephalogram registered normal. He gave it as his opinion, while admitting that the appellee had a severe head injury, that his condition would clear up and that he would sustain no permanent injury; that in order to give the appellee the benefit of the doubt he would give him a ten percent permanent disability; that he thought appellee's complaints were largely imaginary and that his trouble was ''attitude and put on.'' He admitted, however, that if the appellee's complaints were genuine, he would be unable to return to work. It might be observed here, however, that the act of malingering ascribed to the appellee by the witness is wholly inconsistent with the characteristics ascribed to the ap-

pellee by his employers when they described him as a hard working, industrious, conscientious and truthful worker who was always on the job. It is significant, too, that in testifying Dr. Patton said it was his understanding that appellee was rendered unconscious for only about twenty-four hours, thus indicating an erroneous understanding of the extent of appellee's injury.

Dr. Thompson treated the appellee from the time of his injury. He attended him at the hospital and in his home and continued to treat him after he was able to be up and come to his office. His records showed that he was still treating him in 1953 and 1954. He attended him at his office in 1953 on January 20, February 10, March 3, March 31, April 17, April 21, May 12, May 26, June 9, June 23, July 8, August 4, August 18, November 10 and November 17, and in 1954, on January 5, February 2, March 2, April 2, and May 19. Dr. Tompson said that the appellee's wife usually accompanied the appellee on the office visits. He noticed nothing abnormal in his walk except that he moved slowly. He thought that appellee's personality had suffered a change, that he was now a depressed type of person. He said the appellee complained of a roaring in the head and dizziness, and that the dizziness would be the result of a blow on the head. He said he thought that appellee could do some type of light work, but that he would not recommend him for heavy work, and he thinks the appellee has a five percent permanent injury to the brain which affects his power to think. He further testified that from his examination and treatment of appellee and from a history of the injury, he is of the opinion that appellee suffered some brain damage and damage to the tissues and that he is still having some residual effects from the original injury.

The relation of the foregoing proof in this case clearly indicates that the decision of the Commission was supported by substantial if not overwhelming evidence

and that said decision should not be disturbed but should be affirmed.

It is contended by the appellee on cross-appeal that the circuit court erred in disallowing the ten percent penalty on all unpaid installments of compensation more than fourteen days past due. Subdivisions (d) and (e) of Section 6998-19 of the Mississippi Code of 1942 provide as follows:

"(d) If the employer controverts the right to compensation he shall file with the commission on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the commission, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted, but failure to file this notice shall not prevent the employer raising any defense where claim is subsequently filed by the employee, nor shall the filing of the notice preclude the employer raising any additional defense.

"(e) If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subdivision (d) of this section, or unless such non-payment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment."

The evidence is undisputed in this case that the adjuster for the insurance carrier discontinued the compensation payments to the appellee on August 10, 1953 without notice to or authority from the Commission. There is

no showing in the record that the discontinuance of the payments was due to conditions over which the appellants had no control. The adjuster himself testified that he had information that the appellee was doing some work in his garden and that he went to the home of the appellee and saw him coming from the garden with some implement in his hand but he could not say whether it was a rake or a hoe or a broom. The adjuster did not see the appellee working in his garden. He testified that appellee walked to the fence without assistance and talked to him. The adjuster then determined to have the doctors further examine the appellee, but without awaiting the report of the doctors, which he did not get as a matter of fact until April, 1954, he discontinued the payments. In our opinion this action of the adjuster was wholly unwarranted and wholly unjustified and clearly subjects the appellants to liability for the ten percent penalty provided by statute. In fact, there will, in our opinion, be few cases presenting stronger grounds for the application of the penalty than the case now before us. The statute was designed to deter the unwarranted and unjustified discontinuance of compensation payments upon which the injured worker depends for his support and that of his family. It would be a threat to the security of compensation payments to permit the adjuster for the insurance carrier to become the sole arbiter of their continuance or discontinuance. The statute is a salutary one and should be applied in cases where the facts warrant it as they do in the case now before us. We are accordingly of the opinion that the circuit court was in error in denying the ten percent penalty.

In the light of the views expressed, we are of the opinion that the judgment of the circuit court, except insofar as it denies the ten percent penalty, should be affirmed on direct appeal, and that said judgment insofar as it denies the ten percent penalty should be reversed on cross-appeal, and that the decision of the Commission should be and it is affirmed and reinstated, and the cause

is remanded to the Commission for supervision by the Commission as to the payment of the benefits awarded.

The judgment entered in this Court shall provide for the allowance in accordance with Section 1971, Mississippi Code of 1942, of five percent damages on the total amount of weekly installments accrued and unpaid to the date of the entry of such judgment, and shall likewise provide that each weekly installment shall bear interest at the rate of six percent per annum from its due date until paid.

Affirmed on direct appeal, reversed on cross-appeal, and remanded.

*Lee, Kyle, Arrington* and *Ethridge, JJ.,* concur.

## ON MOTION TO CORRECT JUDGMENT AND MOTION OF APPELLEE'S ATTORNEY FOR ALLOWANCE OF ATTORNEY'S FEE.

KYLE, J.

An opinion was rendered and a judgment entered in this case on November 7, 1955. The court affirmed the award of compensation made by the Workmen's Compensation Commission to the appellee, Joe Pinkney, under the Workmen's Compensation Law, for permanent partial disability, in the sum of $24.12 per week, beginning October 24, 1953, and such payments to continue so long as permanent partial disability exists but not to exceed 450 weeks. The order of the Commission, which was affirmed by this Court, did not limit the award for permanent partial disability not to exceed 450 weeks to the maximum of $8,600.00, and the judgment rendered by this Court did not provide such maximum limitation of $8,600.00.

Since the decision was rendered a motion has been filed by the appellants asking that the judgment of this Court be amended so as to provide that the payments of compensation for permanent partial disability shall

not exceed 450 weeks, or the maximum of $8,600.00, which-ever shall be the lesser in amount.

A motion has also been filed by the attorney for the appellee asking for the allowance of an attorney's fee of 33-1/3 per cent of all sums allowed as compensation, including penalties and interest, plus reasonable and necessary expenses, as provided in his written contract of employment.

Both motions have been considered by the Court.

■■ The motion of the appellants to correct judgment will be sustained, to the extent that the judgment of this Court shall be amended, so as to provide that the total weekly payments for permanent partial disability shall not exceed 450 weeks or the maximum of $8,600.00, whichever shall be the lesser in amount. J. F. Crowe Wells Servicing Contractor v. Fielder, 224 Miss. 353, 80 So. 2d 29.

■■ The motion of the appellee's attorney for the allowance of an attorney's fee of 33-1/3 per cent of all sums allowed as compensation, including penalties and interest, will be sustained; but no additional allowance will be made to cover "reasonable and necessary expenses." The amount of attorney's fee thus allowed shall be computed and paid in a lump sum as provided in the opinion rendered in Sunnyland Contracting Co. Inc. v. Davis, 221 Miss. 744, 75 So. 2d 638.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.