McMILLIN, C.J.,
for the Court:
¶ 1. Joseph Brisco, Jr. was awarded certain benefits under this state’s workers’ compensation laws. The initial order establishing Brisco’s compensation was entered by the administrative judge for the Mississippi Workers’ Compensation Commission. Brisco’s employer, Cooper Lighting HID, sought review of that decision by the full Commission. The Commission, adopting the findings and conclusions of the administrative judge, affirmed the award, as did the Circuit Court of Warren County in a subsequent appeal. The matter is now before this Court for resolution. *201 For reasons we will proceed to discuss, we affirm the circuit court judgment.
I.
Facts
¶2. Brisco was working for Cooper Lighting in December 1998, when he fell at work and injured his back. His injury occurred the day before a two week period that the plant where he worked was to be closed for the holiday season. In January 1994, Brisco attempted to return to work and did work several days but reported being unable to function due to severe back pains. He was seen by two doctors in the immediate aftermath of his injury and underwent back surgery in early February. The treating surgeon released Brisco to return to work in November 1994; however, Brisco complained that the physical efforts of his job were worsening his pain. Brisco was again released by his physician to return to work in June 1995, but worked only a few days, again claiming he was unable to perform the duties of his position due to constant pain. At the time of his June release, the surgeon assigned Brisco a ten percent impairment rating to the body as a whole arising out of the limitations associated with his back injury and subsequent surgery.
¶ 3. At that point, Brisco began consulting with other doctors in an attempt to reheve his symptoms of pain. At least one doctor was unsympathetic to Brisco’s condition, indicating that he was unable to locate a source for Brisco’s subjective pain complaints. Other physicians, however, attempted to aid Brisco in his pain management efforts by recommending physical therapy, work hardening programs, steroid injections, and use of a TENS unit. Bris-co was offered the opportunity to return to work in a less-physically-demanding position, but declined because he thought he could not handle the bending, twisting and stooping associated with that job.
¶ 4. Brisco was subjected to a psychological evaluation to see if there might be a psychosomatic component to his complaints. Ultimately, he was diagnosed as suffering depressive symptoms associated with pain and the loss of his job. Brisco began seeing Dr. Michael Winkelmann in January 1996, and Dr. Winkelmann prescribed a supervised exercise program to alleviate what Dr. Winkelmann thought were soft tissue, rather than skeletal, injuries. On February 19, 1996, Dr. Winkel-mann saw Brisco again but reported that Brisco had not begun the recommended therapy.
¶ 5. Brisco testified to extensive efforts to obtain other employment with duties that would not exacerbate the pain associated with his back injury but that those efforts had not proven successful.
¶6. Brisco was described as an intelligent, articulate, person with a high school degree and some college courses.
¶ 7. The Commission determined that Brisco had, in fact, suffered a permanent loss of wage-earning capacity based on the surgeon’s testimony of a ten percent disability to the body as a whole along with the recommended restrictions on Brisco’s future physical activities. The Commission considered this evidence together with Brisco’s testimony of his inability, due to pain, to perform the normal duties of the various post-injury jobs he had tried during his attempts to return to Cooper Lighting. The Commission further found that, though Brisco had so far been unable to find other gainful employment, there was every indication that he was qualified for a less demanding position that would compensate him at the rate of $5 to $6 per hour. Thus, though the Commission found that Brisco was not totally permanently disabled as he contended, it did find that he had suffered a fifty percent industrial disability and awarded benefits commensurate with that determination.
¶ 8. In addition to the permanent partial disability payments, the Commission awarded Brisco temporary total disability benefits from the date of his injury until *202 February 19, 1996. The latter date was not based upon any medical evidence of Brisco having reached maximum improvement. Rather, it was based on a finding that Brisco ceased any effort at that time to improve his condition by failing to undergo the physical therapy program advocated by Dr. Winkelmann.
II.
The First Issue: The Period of Temporary Total Disability
¶ 9. Cooper Lighting argues that there is not substantial evidence in the record to support a finding that Brisco’s temporary total disability continued until February 1996. In support of its argument, Cooper Lighting points to evidence in the record that, on several occasions, various treating physicians had released Brisco to return to work without restriction, the last such event occurring on August 11, 1995. Thus, .Cooper Lighting argues, Brisco could not be entitled to temporary total disability payments after August 11, 1995.
¶ 10. However, the record reflects that, even after that date, Brisco continued to seek medical help for his recurring pain symptoms, and there is evidence in the record that those physicians who treated Brisco after August 11, 1995, were hopeful of alleviating those symptoms. By way of example, Dr. Michael Manning of the Pain Management Clinic recommended steroid injections in October and November 1995. Dr. Donald Bonner of the same clinic recommended a TENS unit in January 1996. Brisco did not begin seeing Dr. Winkel-mann of the Mississippi Methodist Rehabilitation Center in Jackson until late January 25,1996.
¶ 11. There was medical evidence presented that would support a finding that, during that period, Brisco’s pain symptoms were severe enough to be disabling. So long as Brisco continued to receive further medical treatment with the reasonable prospect of alleviating the disabling nature of those pain symptoms, there is no doubt that, under our law, he had not reached maximum medical improvement. See generally vardaman s. DUNN, MISSISSIPPI WORKMEN’S COMPENSATION § 75 (3rd ed.1990)(explaining temporary disability); McGowan v. Orleans Furniture, Inc., 586 So.2d 168, 168-69 (Miss.1991); J.F. Crowe Well Servicing Contractor v. Fielder, 224 Miss. 353, 357-58, 80 So.2d 29, 30-31 (1955). This would hold true even though some treating doctors may have held a different opinion as to the state of Brisco’s recovery. It is not the duty of this Court to determine where we believe the preponderance of the evidence lies on the question. Rather, if there is credible evidence in the record that is in accord with the decision of the Commission, it is our obligation to affirm. Hollingsworth v. I.C. Isaacs & Co., 725 So.2d 251 (¶ 11) (Miss.Ct.App.1998). Finding that there was evidence that Brisco continued to be treated for his pain symptoms in an attempt to alleviate them or lessen their severity well past August 11, 1995, we can find no error in the Commission’s decision to extend temporary total disability benefits past that date.
¶ 12. Cooper Lighting did not raise the issue before the Commission, nor does it do so before this Court, as to whether Brisco’s apparent unwillingness or lack of motivation to follow Dr. Winkelmann’s prescribed course of physical therapy might have invoked the provisions of Section 71-3-15(1) of the Mississippi Code which permits total suspension of benefits when an employee unreasonably refuses treatment. Miss.Code Ann. § 71-3-15(1) (Rev.1995). Neither does Brisco, by way of cross appeal, allege that his temporary total disability benefits should have extended past February 19, 1996, based on some perceived misconception by the Commission of the effect of declining prescribed treatment. See, e.g., Dorris v. Miss. Reg. Housing Auth., 695 So.2d 567, 568-69 (Miss.1997); Triangle Distributors v. Rus *203 sell, 268 So.2d 911, 912 (Miss.1972). Therefore, we find ourselves without any legitimate course other than to affirm the Commission’s determination of February 19, 1996, as being the date that Brisco’s temporary total disability benefits should cease.
III.
The Second Issue: The Existence and Extent of Brisco’s Permanent Disability
¶ 13. Cooper Lighting urges that there was no credible evidence to support a finding that Brisco had suffered a fifty percent loss of his wage earning capacity as the result of his back injury. The administrative judge apparently found Brisco to be credible when he testified concerning his inability to perform his previous duties, or other jobs requiring substantial physical activity, due to persistent pain. There was medical testimony to support Brisco’s subjective complaints of pain and medical evidence that treating physicians had recommended restrictions on Brisco’s ability to lift heavier objects that would limit the availability of jobs for which Brisco could qualify.
¶ 14. The administrative judge, relying on a finding that those more sedentary jobs for which Brisco could reasonably be expected to qualify usually commanded a salary substantially less than Brisco had been earning prior to his injury, determined that Brisco’s medical disability of ten percent to the body as a whole actually translated to an industrial disability of fifty percent. The Commission, upon review of the record, found that there was no basis to conclude that the administrative judge had erred in those findings and adopted the administrative judge’s findings and conclusions as those of the Commission.
¶ 15. The Commission has substantial discretion in making such determinations. Hardin’s Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss.1990). The Mississippi Supreme Court has acknowledged that in any such determination there is an unavoidable element of arbitrariness. Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). Based upon our review of the evidence in this record and the reasoning of the Commission, we conclude that this award of partial permanent disability was not so unreasonable or without foundation that we ought to intercede.
¶ 16. Cooper Lighting points to the fact that it offered Brisco a position with lighter duties at the same level of compensation, which he declined to take, and that this was evidence that Brisco really had not suffered a loss of earning capacity. Brisco testified that the twisting and stooping associated with such a job would, in his opinion, exacerbate his pain symptoms and the Commission appeared to have accepted Brisco’s assertions. In all events, the mere fact that the employer is willing, as an accommodation to an injured employer, to make some concession to the employee in terms of job duties in order to permit that employee to return to work is not, of itself, sufficient to prove that the employee has not seen his wage earning capacity permanently diminished. laRSOn’s WORKERS’ compensation law § 57.34 (1998); O’Neal v. Multi-Purpose Mfg. Co., 243 Miss. 775, 781, 140 So.2d 860, 863 (1962). Were that the rule, an employee so accommodated would find himself hostage to the continued good will of the employer and the continued viability of the employer’s business since he would have no guarantee that other potential employers would be willing to make such concessions.
IV.
The Third Issue: Brisco’s Depression Symptoms
¶ 17. Cooper Lighting urges that the administrative judge, and thus the Commission, erred in finding that Brisco’s symptoms of depression were causally connected to his work-related back injury. This Court has closely reviewed the ad *204 ministrative judge’s order and can discover no such determination by the administrative judge. The order discusses the course of Brisco’s treatment, including his examination relating to symptoms of depression, but nowhere in the order does the administrative judge conclude as a matter of fact that his depressed condition was work-related, nor does the administrative judge specifically order payment of psychological services rendered by Dr. Koestler.
¶ 18. Despite the absence of such a finding by the administrative judge, the record shows that, in its petition for review by the full Commission, Cooper Lighting urged the Commission to find error in the administrative judge’s “finding that the medical services of Dr. Angela Koestler are reasonable and necessary.” The Commission, in affirming the administrative judge, made the general finding that “in the end we feel the Administrative Judge arrived at the best possible conclusion under the circumstances.” It did not speak to the specific issue of Dr. Koestler’s services one way or the other.
¶ 19. We conclude, therefore, that the matter is not properly before this Court. We are unable to determine whether Dr. Koestler’s services were included in the general requirement that Cooper Lighting “[pjrovide medical services and supplies as required by the nature of the claimant’s injury and the process of his recovery therefrom.... ” It was incumbent upon Cooper Lighting, in the course of contesting a specific claim for medical services, to obtain a definitive ruling from the Commission in order to preserve the issue for review on appeal.
¶ 20. In all events, it is clear that- this dispute goes only to the payment of Dr. Koestler’s fees and does not extend to any possible error in the determination of the extent of Brisco’s permanent disability since it is readily apparent that the Commission’s determination on that score was based entirely on Brisco’s post-injury physical condition. Whether there remains a procedural vehicle to permit these disputants to have the Commission resolve the matter of Dr. Koestler’s treatment costs is a matter we leave to the parties and the Commission.
¶ 21. For the foregoing reasons, we decline to reach the issue of whether Dr. Koestler’s services were properly attributable to Brisco’s on-the-job injury.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY AFFIRMING THE DECISION OF THE WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. STATUTORY PENALTIES AND INTEREST ARE ALLOWED ON THE AWARD OF TEMPORARY TOTAL DISABILITY AND ON ALL INSTALLMENTS OF PERMANENT PARTIAL DISABILITY WHICH HAVE ACCRUED PRIOR TO THE ISSUANCE OF THE MANDATE IN THIS PROCEEDING, INTEREST IS TO RUN ON EACH UNPAID INSTALLMENT FROM THE DUE DATE THROUGH DATE OF PAYMENT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P. JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.