# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-01552-SCT

*LEVON FLOWERS*

*v.*

*CROWN CORK & SEAL USA, INC., PACIFIC EMPLOYERS INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, AND AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2011 |
| TRIAL JUDGE: | HON. JAMES McCLURE, III |
| TRIAL COURT ATTORNEYS: | LAWRENCE J. HAKIM |
| | CHARLIE BAGLAN |
| | ROBERT R. STEPHENSON, JR. |
| | JOSEPH T. WILKINS, III |
| | CASEY DALE YOUNGER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLIE BAGLAN |
| | LAWRENCE J. HAKIM |
| ATTORNEYS FOR APPELLEE: | ROBERT R. STEPHENSON, JR. |
| | JOSEPH T. WILKINS, III |
| | CASEY DALE YOUNGER |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION IS REVERSED, AND THE CASE IS REMANDED - 04/17/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    The instant case arises out of a workers' compensation claim by Levon Flowers against his former employer Crown Cork & Seal USA. We granted Crown's petition for writ of certiorari to review the compensability of a foot injury Flowers sustained in 2007. The Workers' Compensation Commission denied Flowers's request for permanent disability benefits for this injury and awarded temporary total disability benefits for the period between the injury and the date Flowers was cleared by his doctor to return to work.[1] The Court of Appeals reversed, finding that Flowers was entitled to receive temporary total disability benefits until he reached maximum medical improvement (MMI) for his foot injury, which had not yet been determined by his doctors. *Flowers v. Crown Cork & Seal USA*, No. 2011-WC-01552-COA, 2013 WL 3185999 (Miss. Ct. App. June 25, 2013). We find that the Court of Appeals reached the correct result in this case, but we reach that conclusion based on different precedent.

**FACTS**

¶2.    In August 2007, Dr. Chris Varva diagnosed Flowers with a foot injury (ganglion cyst and bone spurring). After examining Flowers in October 2007, Dr. Varva advised him to take a six-week leave of absence from work. After four weeks away from his job, Flowers returned to Dr. Varva asking if he could return to work. Dr. Varva released Flowers to return

---

[1]The Commission also awarded Flowers permanent partial disability benefits for a 1996 back injury. In its cross-appeal, as well as in its petition for writ of certiorari, Crown challenges this award. The Court of Appeals affirmed the Commission's decision regarding Flowers's back injury, finding that the award of benefits was supported by substantial evidence. Because we agree with the Court of Appeals' holding regarding Flowers's back injury, we limit our review to Flowers's foot injury. *See* Miss. R. App. P. 17(h).

to work on December 3, 2007, against his own recommendations. Dr. Varva continued to opine that returning to work would put Flowers at a greater risk of injury or re-injury.

¶3. Flowers also sought treatment from Dr. Chad Webster for his foot injury. On January 14, 2008, after fitting Flowers with a custom orthotic brace, Dr. Webster wrote a letter to Crown stating that Flowers could return to work without restrictions if he wore his brace. Dr. Webster did not feel that Flowers had reached MMI as of this date, but he hoped that the brace would help him succeed in returning to work.

¶4. Prior to returning to work, Flowers was examined by Morris Selby, a vocational rehabilitation specialist, at Crown's request. Selby described Flowers's job as one that would be physically stressful even for a healthy person. Selby opined that a person with Flowers's injuries would have difficulty performing that type of work. Selby also believed that Flowers was at a disadvantage for residual employability due to his injuries, and that employers might see him as a liability.

¶5. Flowers also underwent an independent medical examination performed by Dr. Fred Sandifer at Crown's request. Dr. Sandifer concurred with Selby's opinion that Flowers's injuries would be exacerbated by prolonged walking and standing, which would cause Flowers to be unable to perform his job. Dr. David Spratt reviewed Dr. Sandifer's examination of Flowers and concurred with his findings. Dr. Spratt opined that, to a reasonable degree of medical certainty, Flowers had a medical impairment that made it unsafe for him to return to work at unrestricted duty. Dr. Spratt recommended that Flowers not be allowed to return to work at Crown. Based on these findings, Crown did not reinstate or rehire Flowers after he was cleared by Dr. Webster.

3

**STATEMENT OF THE CASE**

¶6.     Flowers filed a petition to controvert regarding his 2007 foot injury. After a hearing, the administrative law judge (ALJ) found that Flowers was entitled to temporary total disability benefits from September 21, 2007, to January 14, 2008, the date Flowers was cleared by Dr. Webster to return to work. The ALJ found that Flowers was not entitled to any permanent disability benefits for the 2007 foot injury because Dr. Varva and Dr Webster had not assigned an impairment rating for the injury.

¶7.     The Commission affirmed the ALJ's decision, as did the Panola County Circuit Court. Flowers then appealed to this Court, and the case was assigned to the Court of Appeals. On appeal, Flowers argued that, because he had not yet reached MMI for his 2007 foot injury, he was entitled to continue receiving temporary total disability benefits for that injury. Crown cross-appealed, arguing that Flowers was procedurally barred from claiming compensability for his foot injury. Alternatively, Crown argued that the foot injury was not compensable.

¶8.     The Court of Appeals found that, because Flowers had not reached MMI for his foot injury, he was entitled to continue receiving temporary total disability benefits until such time as MMI was achieved. *Flowers*, 2013 WL 3185999, at *9. The Court of Appeals also found that Crown's claims on cross-appeal were without merit. The Court of Appeals remanded the case to the Commission for a determination of when Flowers reached MMI and whether he was entitled to permanent disability benefits for his foot injury, as permanent disability benefits can be awarded only after a claimant reaches MMI. *Id*. at *10.

4

¶9. We granted Crown's petition for writ of certiorari to review the Court of Appeals' holding regarding Flowers's foot injury.

## STANDARD OF REVIEW

¶10. "The standard of review in workers' compensation cases is limited and deferential." *Total Transp., Inc. of Miss. v. Shores*, 968 So. 2d 400, 403 (Miss. 2007). The Commission is the trier and finder of facts in a compensation claim. *Weatherspoon v. Croft Metals, Inc.*, 853 So. 2d 776, 778 (Miss. 2003). "Absent an error of law, where substantial credible evidence supports the Commission's decision, this Court . . . may not interfere." *Walker Mfg. Co. v. Cantrell*, 577 So. 2d 1243, 1264 (Miss. 1991) (citations omitted). "[W]hen the essential facts are undisputed and the issues presented turn on legal questions, we must apply our own interpretation of the law." *Miss. Ins. Guar. Ass'n v. Blakeney*, 54 So. 3d 203, 205 (Miss. 2011) (citing *KLLM, Inc. v. Fowler*, 589 So. 2d 670, 675 (Miss. 1991)).

## DISCUSSION

**I.     Whether substantial evidence supports the Commission's decision to end temporary total disability benefits for Flowers's 2007 foot injury.**

¶11. Crown argues that the Court of Appeals erred in finding that Flowers was entitled to receive temporary total disability benefits until a date of MMI for his foot injury was determined. Crown contends that the Commission's decision to end temporary total disability benefits on the date Flowers was released to return to work was supported by substantial evidence. "Whether and when a claimant has reached maximum medical recovery are questions which are to be determined by the Commission based on testimony from both lay and medical witnesses." *McGowan v. Orleans Furniture, Inc.*, 586 So. 2d

5

163, 168 (Miss. 1991) (citing *Burnley Shirt Corp. v. Simmons*, 204 So. 2d 451, 453 (Miss. 1967)).

¶12. "Disability," as defined by the Mississippi Workers' Compensation Act, is the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings." Miss. Code Ann. § 71-3-3(i) (Rev. 2011). The Act categorizes disabilities by duration as either temporary or permanent, and by degree as either partial or total. *See* Miss. Code Ann. 71-3-17 (Supp. 2013). "Temporary disability, whether total or partial, has reference to the healing period following injury, . . . until such time as the employee reaches the maximum benefit from medical treatment[.]" *Triangle Distrib. v. Russell*, 268 So. 2d 911, 912 (Miss. 1972) (citation omitted). After that point, any lingering disability is considered permanent. *See McGowan v. Orleans Furniture, Inc.*, 586 So. 2d 163, 168 (Miss. 1991) (citing A. Larson, *The Law of Workmen's Compensation* § 57.12(c), at 10-22 to 10-29 (1989)). Temporary total disability benefits must be paid to the claimant "during the continuance of such disability[.]" *See* Miss. Code Ann. § 71-3-17(b) (Rev. 2011).[2]

¶13. This Court first addressed the question of "when, under the State Workmen's Compensation Act, does temporary total disability end," in *J.F. Crowe Well Servicing Contractor v. Fielder*, 224 Miss. 353, 354, 80 So. 2d 29, 30 (1955). In *Fielder*, the claimant, a roustabout for a well-servicing contractor, suffered a severe work-related head injury. *Id.*

---

[2]This particular language has remained unchanged since the Act's enactment in 1948. *See* 1948 Miss. Laws Ch. 412.

Eight months after his injury, the claimant returned to work at the advice of his doctor, but he was unable to perform the work in which he previously had been engaged. *Id.* Approximately two years later, the claimant's doctor placed the claimant at MMI. On appeal, the employer argued that the claimant's entitlement to temporary total disability benefits ended when he returned to work eight months after his injury. *Id.* This Court rejected the employer's argument, reasoning that "such benefits are to be paid during the healing period, and until such time as the claimant shall reach the maximum benefit from medical care and treatment." *Id.* The fact that the claimant had attempted to return to his previous employment did not necessarily mean that he had reached MMI; his doctor simply was seeking to ascertain to what extent he was responding to treatment. *Id*. Under these facts, this Court held that the Commission was warranted in finding that temporary total disability had not ended when the claimant attempted to return to work, but continued until he reached MMI. *Id.*

¶14.    While this Court in *Fielder* held that a claimant's return to work did not trigger the end of his temporary total disability, it is clear that the claimant in that case was still totally incapable of performing his usual employment due to his injury when he attempted to return to work. *Fielder* did not address a separate class of cases in which a claimant actually is able to return to work in some capacity prior to reaching MMI. In such cases, the Commission has held that temporary disability ends when the claimant returns to work because the claimant is no longer experiencing a total incapacity to earn wages. *See* Miss. Code Ann. 71-3-3(i) (Rev. 2011). For example, in *Barnette v. Panola Mills, Inc.*, MWCC No. 95-11867-F-5141, 1998 WL 603226, at *4 (Miss. Work. Comp. Comm'n Aug. 13, 1998), the

7

Commission held, "If the employee is still technically in recovery from a medical standpoint, but is working and is not suffering any loss of wages, then no temporary disability exists and disability benefits are not payable." In *Hendershot v. Weiser Security Systems, Inc.*, MWCC No. 97-08017-G-0280, 1999 WL 377899, at *3 (Miss. Work. Comp. Comm'n May 25, 1999), the Commission held that "one who is capable of work and is actually working and earning wages during the period prior to reaching maximum medical improvement may not at the same time be regarded as temporarily totally disabled." The Commission reasoned that "[t]emporary disability within the meaning of the Law is an occupational condition which cannot legally or factually co-exist in *one who is able to earn and is actually earning wages*." *Id.* (Emphasis added).

¶15. The Court of Appeals previously has applied similar reasoning to hold that a claimant's entitlement to temporary total disability benefits ends when the claimant's injury no longer prevents him or her totally from earning wages. In *Howard Industries v. Robinson*, 846 So. 2d 245, 254 (Miss. Ct. App. 2002), the Commission awarded temporary total disability benefits to a claimant for a period of four years following his injury, "with credit for . . . sums earned by the claimant during this period." *Id.* at 250. The evidence showed that the claimant had remained gainfully employed for much of the time between his injury and the date he reached MMI. *Id*. at 249-50. The Court of Appeals found that the Commission had erred in awarding the claimant temporary total disability benefits for the four-year period and then crediting the employer for any wages paid during that period. *Id.* The Court of Appeals reasoned that "[r]etaining substantial wage earning capacity *and* being returned by a physician to work while the healing process continues constitutes a temporary

8

partial disability, not a total one." *Id.* at 253 (emphasis in original). Relying heavily on *Hendershot*, the Court of Appeals held that "[a] worker is not entitled to temporary total disability benefits if the worker is not totally disabled. The claimant may be working at reduced wages because of his injuries. That is *partial* disability." *Id.* at 254. Accordingly, the Court of Appeals held that the Commission could award temporary total disability only for the periods prior to the date of MMI during which the claimant could not work at all. *Id.* *See also* **Lankford v. Rent-A-Center, Inc.**, 961 So. 2d 774, 777 (Miss. Ct. App. 2007) (holding that claimant was entitled to temporary total disability benefits only until he was released to return to work, even though he did not reach MMI until several months later).

¶16. We hold that the Commission's holdings in **Barnette** and **Hendershot** and the Court of Appeals' holding in **Robinson** are consistent with the Act's definition of "disability" and that they correctly state the law regarding the duration of temporary total disability. *See* Miss. Code Ann. § 71-3-3(i) (Rev. 2011); Miss. Code Ann. § 71-3-17(b) (Supp. 2013). These cases represent a different class of cases than **Fielder**, where the claimant clearly was unable to return to work prior to reaching MMI. An employee injured in the course and scope of his or her employment is entitled to compensation only "to the extent that he [or she] has been incapacitated to earn wages." **Marshall Durbin, Inc. v. Hall**, 490 So. 2d 877, 880 (Miss. 1986)). Temporary total disability benefits therefore are available "when the employee is completely unable to engage in work and is therefore suffering a total, yet temporary, loss of wage earning capacity." **Hendershot**, 1999 WL 377899, at *3 (citing Miss. Code Ann. § 71-3-17(b) (Rev. 1995)). The date a claimant reaches MMI certainly may coincide with the date he or she is cleared to return to work, but this will not always be the

9

case. If a claimant has not yet reached MMI but is able to return to his or her usual employment during the recovery process, then he or she is no longer suffering a loss of wage-earning capacity, and disability benefits should not continue. Accordingly, we hold that the Court of Appeals erred in this case when it held that "temporary disability *must* extend until there is a finding of MMI." *Flowers*, 2013 WL 3185999, at *9.

¶17. While temporary total disability may not always continue until MMI is achieved, we find that this distinction does not change the outcome of this particular case. It is clear from the record that Flowers had not reached MMI for his foot 2007 injury as of January 14, 2008, the date Dr. Webster released him to return to work. Nevertheless, *if* Flowers had been able to return to work, he would no longer have been entitled to temporary total disability benefits, because he would no longer have been suffering a total "incapacity as a result of injury" to earn wages. *See* Miss. Code Ann. § 71-3-3(i) (Rev. 2011). However, like the claimant in *Fielder*, and in contrast to the claimant in *Robinson*, Flowers was unable to return to work after being cleared by Dr. Webster. Crown's own physicians and rehabilitation specialist opined that it would be unsafe for him to return to work in his current condition because he would not be able to do his job. Crown's argument that Flowers's temporary total disability benefits should end when he merely was cleared to return to work is therefore disingenuous. While Dr. Webster cleared Flowers to return to work, Crown refused to rehire him because of his injuries, and Crown's doctors seemed to be of the opinion that Flowers lacked the ability to perform "the substantial acts required of him in his usual occupation[.]" *See McGowan*, 586 So. 2d at 166 (quoting Dunn, *Mississippi Workmen's Compensation* § 86, 102-103 (3d ed. 1982)). We find that, like the claimant in *Fielder*, Flowers's attempted

10

return to work did not signal the end of his temporary total disability, as it is clear that he was unable to return to his usual occupation.

¶18. In sum, temporary total disability benefits should have continued in this case until the date Flowers reached MMI. The Commission's decision to end Flowers's temporary total disability benefits on the date he was cleared by Dr. Webster is unsupported by substantial evidence. No doctor ever testified that Flowers had reached MMI, and Flowers was unable to continue his usual employment at Crown after he was cleared. There is no evidence that Flowers's injury no longer prevented him from returning to "substantial wage earning capacity" on January 14, 2008. *See Robinson*, 846 So. 2d at 253. Accordingly, we agree with the Court of Appeals that the Commission's decision must be reversed and remanded for a determination of when Flowers reached MMI.

## II. Whether Flowers failed to present medical evidence of a disability due to his 2007 foot injury.

¶19. In this case, the ALJ found that Flowers had not suffered a permanent disability from his 2007 foot injury because his doctors did not assign him a permanent impairment rating or place any restrictions on him as a result of the injury. This finding was affirmed by the Commission.

¶20. Concerning permanent total disability, this Court has held:

> When a claimant, having reached [MMI], reports back to his employer for work, and the employer refuses to reinstate or rehire him, then it is prima facie that the claimant has met his burden of showing total disability. The burden then shifts to the employer to prove a partial disability or that the employee has suffered no loss of wage earning capacity.

11

*Jordan v. Hercules*, 600 So. 2d 179, 183 (Miss. 1992). The record in this case reflects that Crown refused to reinstate or rehire Flowers after his doctors released him to return to work. There is also some evidence that Flowers underwent an unsuccessful search for alternative employment after Crown refused to rehire him. However, the ALJ and the Commission did not determine when Flowers reached MMI for his foot injury. We know from the testimony of Dr. Webster only that Flowers had not yet reached MMI as of January 14, 2008. Therefore, this case is not yet controlled by our holding in *Jordan*. *See Barber Seafood, Inc. v. Smith*, 911 So. 2d 454, 460 (Miss. 2005) (citing *Houston Contracting Co. v. Reed*, 231 Miss. 213, 221, 95 So. 2d 231, 234 (1957)) ("[A] claimant cannot receive permanent disability benefits until he or she has reached MMI."). We reiterate that it is a primary duty of the Commission to analyze the evidence and determine whether and when a claimant has reached MMI. *McGowan*, 586 So. 2d at 168. After determining when Flowers reached MMI for his foot injury, the Commission must decide from the evidence presented whether Flowers is entitled to permanent disability benefits.

**CONCLUSION**

¶21. The judgment of the Court of Appeals is affirmed as to Flowers's appeal and Crown's cross-appeal. The Commission's decision is reversed, and this case is remanded for a determination of when Flowers achieved MMI for his foot injury, as well as a determination of whether Flowers is entitled to any permanent disability benefits after achieving MMI.

¶22. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION IS REVERSED, AND THE CASE IS REMANDED.**

12

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**